## Alexander, Appellant, *v.* Nanticoke Light Company.

| 209 | 571 |
|-----|-----|
| 28 SC | [2]613 |
| 209 | 571 |
| 214 | [2]246 |
| 209 | 571 |
| f215 | 247 |
| 209 | 571 |
| f221 | [1]616 |
| ,209 | 571 |
| 38SC | 233 |

*Negligence—Electricity—Electric light company—Standard of care—Evidence—Presumption.*

Where a person on his own premises handles an electric lamp furnished to him by an electric light company for the very purpose of being handled as a means of getting light, the high standard of duty required of the company is that it must, in the operation of its plant, protect its patrons from the perilous current which is the basis of its business by doing all that human care, skill and vigilance can suggest.

Where a patron of an electric light company without knowledge that the wires on his premises are charged with a higher voltage than is safe, takes into his hand an electrical lamp and is severely shocked and injured, the presumption is that the company was negligent and the doctrine of res ipsa loquitur applies.

Argued April 15, 1903. Reargued April 11, 1904. Appeal, No. 93, Jan. T., 1903, by plaintiff, from örder of C. P. Luzerne Co., Jan. T., 1900, No. 12, refusing to strike off nonsuit, in case of Eugene N. Alexander v. The Nanticoke Light Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before FERRIS, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court.

*Edmund G. Butler*, with him *H. A. Fuller*, for appellant.— The circumstances of the accident raised the presumption of negligence on the part of the defendant: Fitzgerald v. Edison Co., 200 Pa. 540 ; Devlin v. Beacon Light Co., 198 Pa. 583.

A higher degree of care and diligence is required in dealing with a dangerous agency than in ordinary affairs of life or business : Heh v. Gas Co., 201 Pa. 443 ; Com. v. Light & Power Co., 145 Pa. 105 ; Stoughton v. Nat. Gas Co., 159 Pa. 64 ; Mooney v. Luzerne Boro., 186 Pa. 161 ; Alton Ry. &

Illum. Co. v. Foulds, 81 Ill. App. 322; Oil Co. v. Torpedo Co., 190 Pa. 350.

*James L. Morris*, with him *Woodward, Darling & Woodward*, for appellee.—This is a case in which there did not exist between the defendant company and the injured person a relation imposing upon it an absolute duty, an obligation amounting to that of an insurer: Smith v. East End Electric Light Co., 198 Pa. 19; Fitzgerald v. Edison Co., 200 Pa. 540.

Plaintiff must prove by affirmative and direct evidence the particular negligence that caused the accident claimed to have occasioned the injuries and that the cause of the accident was one for which the defendant was liable: Whitaker v. Delaware & Hudson Canal Co., 87 Pa. 34; Goshorn v. Smith, 92 Pa. 435; Huey v. Gahlenbeck, 121 Pa. 238; Reese v. Clark, 146 Pa. 465; Mixter v. Imperial Coal Co., 152 Pa. 395; Reese v. Hershey, 163 Pa. 253; Bruner v. Blaisdell, 170 Pa. 25; Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57; Davidson v. Humes, 188 Pa. 335; Baran v. Reading Iron Co., 202 Pa. 274.

The existence of a contractual relation between the plaintiff and the defendant company did not change the status of the parties, nor do away with the necessity of proving defendant's negligence by direct and affirmative evidence: Leidy v. Quaker City Cold Storage Co., 180 Pa. 323; Davidson v. Humes, 188 Pa. 335.

The doctrine of res ipsa loquitur applies where under the circumstances shown the accident presumably would not have happened if due care had been exercised: Todd v. Traction Co., 192 Pa. 587; Stearns v. Ontario Spinning Co., 184 Pa. 519; Oil Co. v. Torpedo Co., 190 Pa. 350.

OPINION BY MR. JUSTICE BROWN, October 10, 1904:

The premises of the appellant, the proprietor of a china store, in the borough of Nanticoke, were lighted by electricity. The electric light was furnished by the appellee, an electric light company. It had wired the store and cellar of the plaintiff, furnished the electric lamps and made and maintained the connections. On the evening of August 19, 1898, he went into his cellar to show goods to a customer, and, while

handling, in the usual way, an ordinary incandescent light bulb, suspended from the ceiling by a flexible extension cord, was severely shocked and seriously injured. From the facts submitted, it appeared that when he was shocked the electric wires on his premises were charged with a higher voltage than they should have carried, but the cause of this was not shown to have been any specific negligence of the defendant. Four theories were advanced as to what the negligence was and four possible causes assigned for the accident. The learned trial judge, having been of opinion that the doctrine of res ipsa loquitur did not apply, and that the burden of showing affirmatively the cause of the accident was upon the plaintiff, directed the entry of a nonsuit and refused to take it off, for the reason that, as plaintiff had not shown the cause of the accident, the jury would have had to guess at it, if the case had been submitted to them.

Though electricity is the most powerful and dangerous element known to science, it has become part of the commercial, industrial, business and domestic life of the world, working the wonders of the age. It can neither be seen nor heard and is as deadly as it is invisible and silent; but, though such are its qualities, the same science that discovered it can control it in the endless variety of uses to which it has been put; and neither death nor danger need be encountered from it, if properly guarded against by those whose duty it is to have it safely conducted to the points at which it becomes only a useful and harmless agency.

The appellee was incorporated for the purpose of furnishing light by electricity to the public and individuals in the borough of Nanticoke. It entered into a contract with the appellant to furnish him with such light, and part of its contract—the implied part—was that it would do so safely. Apart from any representation by the superintendent, who assured him, according to his testimony, that the electric light would be perfectly harmless, as there " was not power enough in it to kill a mosquito," it was the implied contract between the appellant and the company that it would supply his premises with a safe electric current for lighting them by lamps which it furnished. By this it is not to be understood that the company became an insurer to its patron against all danger

in the use of its electrical appliances on his premises, but simply that it had contracted with him to protect him from injury by exercising the highest degree of care, skill and diligence in the construction and maintenance of its plant and appliances. In Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540, in which a painter who went upon the roof of a house in the lawful exercise of his business, and was killed by coming into contact with a defectively insulated wire, we said, through the present chief justice : " Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them. The defendant, in accord with the common practice of electric companies, recognized this obligation by insulating its dangerous wire. But the duty is not only to make the wire safe by proper insulation, but to keep it so by constant oversight and repair." That it is the imperative duty of an electric light company to perfectly insulate its wires at all points where persons have a right to be, on business or pleasure, and to use the utmost care to keep the insulation perfect, has been repeatedly held in other jurisdictions. Among the cases announcing this rule are, Schweitzer v. Citizens' Electric Co., 52 S. W. Repr. 830 ; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173 ;* Geismann v. Missouri-Edison Electric Co., 173 Mo. 654 ;† Lexington Railway Co. v. Fain, 71 S. W. Repr. 628, Court of Appeals of Kentucky. But when, as here, one on his own premises handles an electric lamp furnished to him by an electric light company for the very purpose of being handled as a means of getting light, the high standard of duty required of the company is that it must, in the operation of its plant, pro-

---

* Also reported 37 S. W. Repr. 851.

† Also reported 73 S. W. Repr. 654.—REPORTER.

tect its patrons from the perilous current which is the basis of its business by doing all that human care, skill and vigilance can suggest.

When the foregoing rule is observed by an electric light company, the presumption is that no such injury will befall its patrons as was sustained by the present appellant; but, on the other hand, when such injury does occur, the presumption is that the rule had been disregarded. This is manifestly reasonable, for it is within the common knowledge of mankind, and, therefore, a matter of judicial notice, that electricity can be safely conducted and used as an agent for the production of light, heat or power. The rule on this subject is nowhere more clearly stated than in Scott v. London, etc., Dock Co., 3 Hurl. & C. 596 : " Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanations by the defendants, that the accident arose from want of care."

To say that one injured as the appellant was cannot recover unless he affirmatively proves, in the first instance, the specific act of negligence of the company which caused the injury, would, in many cases, be a denial of a right to recover at all, no matter how negligent the company might be. Against patent dangers, or against those as to which he may have been warned, the user of electricity must of course guard himself, and, if he dallies with them, taking hold, by way of illustration, of an appliance emitting sparks, or handling an uninsulated wire after having been warned not to do so, he voluntarily places himself in peril and cannot recover, if injured; but when, as here, no danger was seen, and there was no reason to think it was lurking in the company's appliances, its patron took the lamp in his hand and was severely shocked and injured, the only reasonable presumption instantly is that something was wrong over which the company had exclusive control. The user of electricity, though having knowledge of its dangerous character, has no knowledge of how this danger can be controlled. He relies upon the company to control it, and, when this appellant took the lamp in his hand, he had a right to do so without a thought that it had not been controlled.

What did he know of what it was necessary for the company to do, as a dealer in electricity, to protect its customers from the danger of its commodity? He is not presumed to know anything. As a rule, the man who takes in his hand an electric lamp or telephone receiver, starts an electric fan or uses any other appliance which he has a right to use under his contract with an electric company, is helpless if the invisible and dangerous current has not been properly controlled by the company's officers and employees, who are conclusively presumed to know how to control it.

One of the cases cited by appellant in support of his contention that there was a presumption of appellee's negligence, which it was bound to rebut, is Alton Railway and Illuminating Co. v. Foulds, 81 Ill. App. Ct. Rep. 322. There the wife of the plaintiff below went into a cellar to turn on an electric light, and, on taking hold of the lamp, received a shock and was killed. At the trial the plaintiff did not show by any specific evidence how the increased voltage that caused his wife's death had got on the wire. In affirming the judgment on the verdict in his favor, the court said: "When appellant wired the basement or cellar of appellee's house, and agreed to furnish him light for hire, it well knew it was dealing in an element that, delivered in a current of high voltage, such as was carried on its primary wires, was almost certain to bring death to the person who turned on the lamp, if there was a ground of the current on the circuit; hence, the law imposes upon it the duty to exercise a high degree of care and skill in the delivery of the element it had contracted for. If the injury itself furnishes a presumption of negligence so as to require the defendant to show, by evidence, that it has been guilty of no negligence that caused it, then it logically follows that all that is necessary to be averred in the declaration to entitle the plaintiff to recover is the agreement, a negligent breach of it, and the result; also that the plaintiff has not by any neglect on his part contributed to the result." There are a number of cases upon which the appellant could place greater reliance as to the high degree of care required of an electric light company and as to the presumption of negligence in case of injury to its patrons in the ordinary use of its appliances; but reference will be made to only two of them.

In Denver Consolidated Electric Co. v. Lawrence, 73 Pac. Repr. 39, Supreme Court of Colorado, which was an action against the company for injuries caused by an electric shock to plaintiff while turning on a light in his home, in holding that it was proper to charge that the plaintiff was not required to point out the specific negligence which caused the accident, the court said: "Ordinarily the allegations of duty and a breach thereof are not sufficient; but if the duty results from the facts stated, then the allegations of duty may be discarded as surplusage, and the complaint held to be sufficient. If the allegations of the complaint concerning the relationship of the parties and the character of the injuries received make out a prima facie case of liability, then the complaint is good as against a general demurrer. We think the complaint does, from the very character of the accident as set forth therein, call upon the defendant to make defense to the case of negligence, in supplying electricity to the residence, which the facts as charged make out. The business of the defendant is that of selling electricity to the people of Denver—a business so fraught with peril to the public that the highest degree of care which skill and foresight can obtain, consistent with the practical conduct of its affairs under the known methods and present state of its particular art, is demanded: Denver Consolidated Electric Co. v. Simpson, 21 Colo. 371 (41 Pac. Repr. 499).

"The plaintiff, while attempting to do that which every patron of the company must do to make use of the electric light, received into his body a current of electricity, burning his hands and feet and permanently injuring him. Such injuries are not, under ordinary circumstances, received by persons who turn on an incandescent lamp, if the company supplying the current has not been negligent. The defendant, when it contracted with the father of the plaintiff to sell electricity for light, contracted to keep its plant and appliances in such condition that no greater volume of electricity would be carried into the house than was necessary for its proper lighting. The quantity of electricity required for lighting purposes in residences is not sufficient, if it pass through the body, to cause the injuries described by the plaintiff in his complaint. It follows, therefore, that the plaintiff must have received a very

much greater quantity of electricity than the company contracted to supply. The court, therefore, did not err in overruling the demurrer to the complaint, nor in overruling the objections to the introduction of testimony.

"The company insists that it is not an insurer, and that its obligation is that of using ordinary care. We are not prepared to say that it is an insurer, but the patrons of the company have the right to presume that they will not be injured in attempting to use that which the company sells, and that it will do all that human care, vigilance, and foresight can reasonably do, consistent with the practical operation of its plant, to protect those who use its electric light."

The other case is Royal Electric Co. v. Heve, Rapports Judiciares de Quebec, 11 Banc Roi, 436. The facts in that case are singularly analogous to those in the present one; and there as here, on the trial, different theories were advanced as to the specific negligence of the company which caused the injury. One was accepted by the court below as correct, but the appellate court thought another more probable.. The case, however, was disposed of without regard to either, HALL, J., delivering the judgment of the Court of King's Bench, saying: "But in my opinion, it is a matter of indifference, legally speaking, where this current originated. The appellants should be held responsible for it under any circumstances. They deal in a commodity of a recognized dangerous character, the control of which is a matter of technical knowledge and experience, and entirely uncomprehended by the general public. When a company like the appellants, organized under the name of an electric company, hold themselves out to the public as dealers in and suppliers of that commodity, for gain, and make contracts with private individuals for furnishing light or power over a system constructed and controlled by themselves, they are bound to deliver it in a form and under conditions of safety for the person and property for whose use the company charge and receive compensation, and they are also bound, in the discharge of their part of the contract, to a supervision and diligence proportionate to the peculiar character and danger of the commodity in which they deal.

"In the case under consideration, the electric company not only had stipulated but had exercised the right of supervision

of their system within the premises of the deceased. As to that portion of the system outside of his premises no one but their own employees had even the right of examination or interference. If their transformer was defective, or could become dangerous from the moisture of an ordinary rainstorm, it was their business to have discovered and removed the cause of danger. If their system of wiring came within an inch of the wire of another company—even if on a dead wire—common prudence would have suggested their interference, either by a protest against the other company or by the removal of their own wires, while it is in evidence that the proximity of the two systems had existed for months prior to this accident. The fact that guy wires become, from accident, live wires of the most dangerous character, is one, unfortunately, of too frequent occurrence to be overlooked or ignored in the exercise of the constant supervision which an electric system exacts, and which the public has the right to enforce.

"The implied contract between the appellants and deceased was that they should supply his premises with a safe electrical current for lighting purposes by the lamps which they furnished. They failed in this respect, and in the use of their lamp he received a current of electricity by which he was instantaneously killed. The presumption is that it came over the same system and from the same source as that by which his ordinary supply was delivered to him by appellants. The burden of proof is upon them to show the contrary. This they have failed to do, and the judgment holding them responsible for the accident should be confirmed." To these utterances reason responds, and they must, therefore, be the law.

The presumption that the appellee was negligent is not conclusive. The accident may have been due to causes over which it had no control, and, if so, not being an insurer, it is not liable. But the presumption is that it was blamable, and it can escape liability for appellant's serious injury only by persuading a jury that it had performed its duties as we have here defined them.

As the burden was upon the defendant to show that it had not been negligent, the last assignment of error is sustained. The rest need not be considered.

Judgment reversed and procedendo awarded.