## COHN v. UNITED AIR LINES TRANSPORT CORPORATION.
### No. 2529.

District Court, D. Wyoming.

Feb. 8, 1937.

E. C. Raymond, of Newcastle, Wyo., and Edward T. Lazear, of Cheyenne, Wyo., for plaintiff.

Wilfred O'Leary, of Cheyenne, Wyo., and Smith, Brock, Akolt & Campbell and J. H. Shepherd, all of Denver, Colo., for defendant.

KENNEDY, District Judge.

In the above-entitled cause the plaintiff, as administratrix, seeks to recover damages on account of the death of the intestate Hanley G. Cohn, growing out of the alleged negligence of the defendant in connection with an airplane accident on October 30, 1935, near Cheyenne, Wyo. Omitting reference to the formal allegations of the petition, that portion pertinent to the present inquiry is contained in paragraph 4, reading as follows:

"That on or about the 30th day of October, 1935, at Cheyenne, Wyoming, the Plaintiff's intestate, Hanley G. Cohn, at the request of the Defendant, United Air Lines, boarded a Boeing plane belonging to the said United Air Lines; that one Marion T. Arnold, now deceased, and an employee of the said United Air Lines was the pilot on said plane, and E. E. Yantis and H. R. Kauffman, both now deceased, and employees of the United Air Lines were in the said plane, said Yantis and Kauffman being instrument mechanics in the employ of the said United Air Lines; that at about the hour of 7:00 o'clock P. M. on said day, the Boeing plane before mentioned took off from the ground for a test flight, with the said Arnold, Yantis, Kauffman and with the Plaintiff's intestate, Hanley G. Cohn, aboard; that during said test flight the said plane was under the sole control and management of the Defendant's employees; that at about the hour of 7:40 o'clock P. M. on said date, and at a point about five miles south of the City of Cheyenne, and during said test flight, said plane crashed, causing the death of the said Hanley G. Cohn and the other three men heretofore mentioned; that said crash was due to the negligence of the Defendant, United Air Lines; that the death of the said Hanley G. Cohn was the direct result of the negligence of the Defendant, United Air Lines; and that his death occurred at a time when said plane was under the sole control and management of the Defendant, United Air Lines, and without fault or negligence on the part of the said Hanley G. Cohn."

In addition, the petition discloses that plaintiff's intestate was himself an air pilot employed by a different air transportation company.

The defendant first interposed a motion to make more definite and certain, in response to which upon the argument it was stated by counsel in plaintiff's behalf that no further or better statement of the cause of accident could be made and that reliance was made wholly upon the application of the doctrine of "res ipsa loquitur," to sustain the cause of action. Under these circumstances the court deemed it to be a useless and futile matter to grant the motion, but suggested that the point might be adequately tested by a demurrer to the petition. Such demurrer was accordingly filed, and the cause is now before the court for consideration upon trial briefs submitted. It seems to be obvious that the foregoing procedure involved the only practical method available. Inasmuch as the petition alleged no

specific acts of negligence, which plaintiff admitted could not be supplied, it became a case to be decided by a consideration of the allegations of the petition as to whether or not in the light of those allegations the doctrine of res ipsa loquitur should be applied. If it should be so applied, it would mean that a cause of action had been stated, or if not, that the demurrer should be sustained and the cause dismissed.

From the early English cases down to the present time, this doctrine has been given much consideration, as revealed by the energy of counsel in their briefs submitted for the enlightment of the court. It would require a treatise upon the subject out of harmony with a trial court memorandum to attempt to review, discuss, or cite even a small number of the decisions and text discussions upon the subject. A few authorities announcing the general principle underlying the doctrine may be helpful in applying it to the facts set forth in the petition.

In 45 C.J. p. 1193, it is said: "Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. This statement of the rule of res ipsa loquitur, based on the expression in an early English case, which has been widely quoted with approval, has been in substance most frequently adopted and applied in subsequent decisions so that the occurrence of an injury under the circumstances therein set forth raises a presumption or permits an inference that the party charged was guilty of negligence."

Again at p. 1196: "The phrase 'res ipsa loquitur,' which literally means 'the thing speaks for itself,' is a term used in a limited class of negligence cases referring to the method of proof of general negligence as distinct from proof of specific negligence. This doctrine, which is considered in various connections at other places in this work, is a rule of evidence peculiar to the law of negligence and is an exception, or perhaps more accurately a qualification of the general rule that negligence is not to be presumed but must be affirmatively proved. Thus, while negligence of defendant, as previously stated, cannot be inferred or presumed from the mere happening of an accident, the law by virtue of the doctrine recognizes that an injury may occur under such circumstances that it may be sufficient to establish prima facie the fact of negligence without further or direct proof thereof. This rule, however, when applicable to the facts and circumstances of a particular case is not intended to and does not dispense with proof of culpable negligence on the part of the party charged, but on the contrary, being a substitute for specific proof of acts of omissions constituting negligence, it merely prescribes one method by which plaintiff may prove the negligence charged against defendant and determines or regulates what shall be prima facie evidence thereof."

The following statement is made upon the subject in San Juan Light & Transit Co. v. Requena, 224 U.S. 89, at page 98, 32 S.Ct. 399, 401, 56 L.Ed. 680, by Mr. Justice Van Devanter in speaking for the Court: "When so read it rightly declared and applied the doctrine of res ipsa loquitur, which is, when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care. Inland & Sea-Board Coasting Co. v. Tolson, 139 U.S. 551, 554, 11 S.Ct. 653, 35 L.Ed. 270, 271; East End Oil Co. v. Pennsylvania Torpedo Co., 190 Pa. 350, 42 A. 707; Alexander v. Nanticoke Light Co., 209 Pa. 571, 58 A. 1068, 67 L.R.A. 475; Trenton Passenger Railway Co. v. Cooper, 60 N.J.Law, 219, 37 A. 730, 38 L.R.A. 637, 64 Am.St.Rep. 592; Newark Electric Light & Power Co. v. Ruddy, 62 N.J.Law, 505, 41 A. 712, 57 L.R.A. 624; 2 Cooley, Torts (3d Ed.) 1424; 4 Wigmore, Ev. § 2509."

A limitation upon the rule of application is found in Patton v. Texas & Pacific Railway Co., 179 U.S. 658, at page 663, 21 S.Ct. 275, 277, 45 L.Ed. 361, as indicated: "And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to

guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

It is likewise narrowed by the language of Judge John F. Phillips of the Circuit Court of Appeals Eighth Circuit in Minneapolis General Electric Co. v. Cronon, 166 F. 651, at page 659, 20 L.R.A.(N.S.) 816, in which he says: "The doctrine of res ipsa loquitur, invoked in argument, has no place under the facts of this case. At best it is uncertain, if not dangerous, in practice, and should not be applied, 'except when it not only supports the conclusion contended for, but also reasonably excludes all others.' Peirce v. Kile, 80 F. 865, 26 C.C.A. 201; Chicago & N. W. Ry. Co. v. O'Brien, 132 F. 593, 67 C.C.A. 421; Northern Pacific Ry. Co. v. Dixon, 139 F. 737, 71 C.C.A. 555."

Justice Riner, in speaking for the Wyoming Supreme Court in Stanolind Oil & Gas Co. v. Bunce, 62 P.(2d) 1297, at pages 1307, 1308, adopts the language of another court in his opinion: "It may be observed additionally, that as suggested by the Massachusetts court in Wilson v. Colonial Air Transport, supra [278 Mass. 420, 180 N.E. 212, 83 A.L.R. 329], that the doctrine of res ipsa loquitur should not be applied 'if there is any other reasonable or probable cause from which it might be inferred there was no negligence at all.' The testimony referred to in the preceding paragraph was such as to authorize the jury to find that there was no negligence on defendants' part."

It will thus be seen that, generally speaking, the doctrine has a somewhat limited application, making it, as it were, a sort of refuge of last resort for the relief of injured persons where specific acts of negligence are incapable of being alleged and proved by the ordinary methods.

It will be noted by the above-quoted portion of the petition that there was a crash of an airplane in which all the occupants were killed; that the airplane at the time was in charge of a pilot who was accompanied by two mechanics all of whom were in the employ of the defendant; that the plaintiff's intestate was requested to board the plane, which under the circumstances may be reasonably construed as equivalent to an invitation; and that at the time the accident occurred the plane took off for a *test* flight. Under these circumstances it is apparent that the plaintiff's intestate was not a passenger for hire to whom the defendant was charged with the highest degree of care. The inference is also imperative that plaintiff's intestate, being invited to participate in a "test" flight, must have known that such a flight was for the purpose of ascertaining the capabilities of the plane for regular service, which were by such flight to be determined. Being himself a pilot, he was thoroughly aware of the danger of the undertaking. Necessarily this situation would imply that it was not then known to any one whether or not the plane was in such condition that it would respond to its expected functions. The plane was in charge of a pilot who was accompanied by two mechanics, and from this the natural inference would be that at least for a test flight it was properly and adequately manned. It would be the ordinary duty and function of a trained pilot and trained mechanics to ascertain the defects, if any, in an airplane through a test flight. The last word in the tragedy is that in the crash all the occupants were killed, so that no one will ever definitely know what actually caused the plane to fall.

Our daily newspapers are replete with airplane accidents, the solution of which will never be known, as in the case at bar. The Department of Commerce, through its Bureau of Air Commerce, has published documents purporting to deal with accidents in the air and their causes. In publications of July and August, 1935, the causes of accidents attributable to carelessness or negligence are but a small percentage of all the causes which are known in this young but growing enterprise. It is definitely known that the presence of air-pockets, cross-currents, clouds, fog, mists, and a variety of climatic conditions bring about disaster for which no one is responsible, except it might be said that he who assumes to fly must look well to his own fate. Stalling motors frequently bring about failures to negotiate the air. Experience teaches us that this is still common in the automobile motor, which has the same method of propulsion as that of the airplane, but with a much longer period of experimentation and development. Of course, when the motor in an auto stalls it generally causes nothing more serious than disappointment, inconvenience, and vexation to the driver and occupants; but

when the motor of an airplane stalls when in the air it is very likely to mean death to the occupants. Only a few of the ordinarily recognized natural hazards of flying which have not yet been definitely overcome, have been mentioned. How can the court legitimately say under all the circumstances that a fall of an airplane upon a test flight was through an exclusion of all other causes, attributable to the negligence of the ones engaged in the operation? And in the face of this, the law tells us that the doctrine of res ipsa loquitur shall not be applied if there is any other reasonable or probable cause from which it might be inferred that there was no negligence at all. It seems impracticable, if not impossible in the case at bar, to reasonably apply the doctrine to the pleaded facts and thereby save the petition.

The facts here seem to me to be much out of line with those in the old English cases out of which the doctrine arose, as in Byrne v. Boadle, 2 H. & C. 722, 159 English Rep. 299, where a barrel of flour fell upon the pedestrian from an upper window; or in Scott v. London Dock Company, 3 H. & C. 596, 159 English Rep. 665, where goods fell upon the Custom House officer from a crane fixed over the doorway; or in Kearney v. London Brighton Railway Company, 4 Ex. 885, 154 English Rep. 1476, where a brick fell upon a person underneath from a bridge structure over which a train was passing; or in Skinner v. London Brighton Railway Company, 5 Ex. 787, 155 English Rep. 345, where one train struck against another train standing at a station and injuring a passenger, both trains being operated by the same company; or, as in the old familiar illustration of a case clearly within the doctrine, of two trains operated by the same agency in collision on the same track going in opposite directions. In these and similar cases all theories of the cause of the accident other than that of negligence are logically excluded by the facts themselves, while in the case at bar there are a variety of causes other than negligence which may have brought about the disaster.

Among the more recent cases dealing with the point is Herndon v. Gregory, 190 Ark. 702, 81 S.W.(2d) 849, 82 S.W.(2d) 244, which was a case involving an airplane accident in which all the occupants of the plane were killed, as in the case at bar. It was pleaded there that the plane was caused to be manned by an unskilled pilot and yet the court held that the petition could not be sustained against demurrer. It was the theory of the court that unless it could be pleaded and proved that the action of the unskilled pilot was the direct cause of the accident, which the petition did not allege and which of course could not be proved, the petition should not be sustained and that otherwise upon the facts the doctrine should not be applied. The court summarizes its conclusions in 190 Ark. 702, 81 S.W.(2d) 849, at page 852, 82 S.W.(2d) 244, 245, in the following language: "We are therefore of the opinion that the res ipsa loquitur doctrine is not applicable in this case, and that no presumption of negligence arises 'from the mere fact of injury, when that fact is as consistent with the presumption that it was unavoidable as it is with negligence.' This accident may have been caused by one or more of a number of reasons over which the owner and operator of the airplane had no control; 'and therefore, if it be left in doubt what the cause of the accident was or if it may as well be attributable to the act of God or unknown causes as to negligence, there is no such presumption.' If the complaint had alleged some particular act of negligence or some unusual or out of the ordinary occurrence, from which negligence might be presumed, such as cranking the engine without blocks in front of the wheels as in the Genero Case, supra [Genero v. Ewing, 178 Wash. 78, 28 P.(2d) 116], or attempting to land at too low and unsafe a speed or at a dangerous or unsafe place as in the Seaman [Seaman v. Curtiss Flying Service, Inc., 231 App.Div. 867, 247 N.Y.S. 251] and Stoll Cases [Stoll v. Curtiss Flying Service, Inc., 1930 U.S. Aviation Rep. 148], supra, or had a collision occurred with another airplane as in the Smith Case, supra [Smith v. O'Donnell, 215 Cal. 714, 12 P.(2d) 933], or had he in a careless and negligent manner piloted his plane into a tree as in the McCusker Case, supra [McCusker v. Curtiss-Wright Flying Service, Inc., 269 Ill.App. 502], then it would have alleged a fact over which human conduct had control which might give rise to the application of the doctrine of res ipsa loquitur. Not having done so, we are of the opinion that the complaint did not state a cause of action, and that the trial court correctly sustained the general demurrer thereto."

The last-cited case was decided by a four-three decision of the Supreme Court of Arkansas, and a dissenting opinion is found under the same title in 82 S.W.(2d) 244. The gist of the dissenting opinion, however, revolves around the contention that the allegation in the petition that the plane was placed in the hands of an unskilled pilot was sufficient to sustain it against demurrer. With some of the general language of this dissenting opinion, however, I do not find myself in accord, as for example, that found on page 245 of 82 S.W.(2d), as follows: "But if there were nothing stated in the complaint except that the plane fell and the parties were injured, this, under the rule of res ipsa loquitur, would state a cause of action. It seems clear that the plane would not have crashed and fallen unless the person operating it had been guilty of some negligence."

But even should the contention of the minority opinion of that court be accepted here, it could not rule this case, for the reason that the petitioner here pleads that the plane was in charge of a regularly employed pilot of the defendant company who must be presumed under such pleading to be one skilled in his calling.

. Another case involving an airplane accident in which the doctrine here invoked was held not to be applicable, was decided by the Supreme Judicial Court of Massachusetts in Wilson v. Colonial Transport Co., 278 Mass. 420, 180 N.E. 212, 83 A.L.R. 329. The case apparently involved the irregular performance of one of the motors when the plane was about to take off. After reiterating the substance of the doctrine as previously herein set out, the court concludes its opinion with the following significant language, 278 Mass. 420, 180 N.E. 212, at page 214, 83 A.L.R. 329: "We are not as yet, in respect to the operation, care and characteristics of aircraft, in a position where the doctrine of cases like Ware v. Gay, 11 Pick. [Mass.] 106, as to a stagecoach; O'Neil v. Toomey, 218 Mass. 242, 105 N.E. 974, as to the qualities of ice; or Gilchrist v. Boston Elevated Railway Co., 272 Mass. 346, 172 N.E. 349, as to trolley cars or steam railroad trains, can be applied. The decision of cases of that nature rests upon facts constituting a part of a widespread fund of information. No ruling of that character could be made upon the meager facts here shown."

It may be that in the not too distant future in the evolution and development of the wonderful and enchanting science of aviation, a sufficient fund of information and knowledge may be afforded to make a safe basis in compensating for injuries sustained, the application of the doctrine here invoked; but it seems to me quite clear that that time has not yet arrived. Man has made rapid strides within a very small cycle in his endeavor to become master of the air, of which the bird until recently has been exclusively king in his own right, but with the exceedingly large number of unexplained and inexplicable catastrophies it is evident that he has not yet become such master. It will not do to discourage the pioneer by making him assume undue hazards in a monetary way. In the meantime it is quite evident that those who choose air-ways for transportation must in many instances be held to have themselves assumed the risk.

An order may be entered sustaining the demurrer; and it being 'evident that the plaintiff cannot plead further, judgment will be for the defendant in a dismissal of plaintiff's petition with costs and reserving to her all proper exceptions.