Henry C. Kamienski, Appellee, v. Bluebird Air Service, Inc., Appellant.

Gen. No. 42,324.

Heard in the third division of this court for the first district at the October term, 1942. Opinion filed February 2, 1944. Rehearing denied March 6, 1944.

EKERN, MEYERS & MATTHIAS, of Chicago, and SEARS, O'BRIEN & STREIT, of Aurora, for appellant; BARNABAS F. SEARS, of Aurora, and DONALD L. THOMPSON and WILLIAM G. CHORN, both of Chicago, of counsel.

HOWARD D. MOSES, of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action resulting from an airplane accident. Verdict was for plaintiff in the amount of $5,300 and upon his remitting $2,000 the court overruled the defendant's motion for a new trial and entered judgment for plaintiff for $3,300. Defendant appeals.

Plaintiff, a passenger for hire, charges defendant in Count 1 with negligent operation of the plane, as a result of which he was injured; and in Count 2 with violation of certain United States Department of Commerce regulations for testing engines before take-off, and unsafe mechanical condition of the plane.

Plaintiff, B. S. in Education, University of Michigan, on July 30, 1939, took his first airplane ride in a tri-motor Stinson 12-passenger plane owned by defendant's sightseeing service. He purchased a ticket, entered the plane and five or ten minutes later the pilot who landed at the airport in a single motored plane walked to the Stinson, entered and immediately started the motors. He taxied to the southwest corner of the Municipal Airport, turned to face northeast and waited there from two to five minutes with the engine running before getting the signal to take off. The plane ran about a half mile on the runway, took off, crossed Cicero avenue east, turned north parallel with Cicero avenue, and after turning west, when the plane was about 500 feet in the air, the left motor began to miss and the plane started to lose altitude. The motors were turned off, the plane side-slipped, crashed on the left wing and dug into the ground burying the under-

carriage. Plaintiff, able to walk, got out of the plane, helped remove the pilot who was badly injured, and assisted other passengers from the ship.

At the time of the accident plaintiff was 32 years of age, and a physical instructor at the Chicago Park District where he had worked since May of 1935 on a graduated scale salary which at the time of the trial would have been $160 a month. After the accident he was in the hospital 11 days and was later treated at his home by his family physician from August, 1939 until February, 1942, mostly by diathermy. He returned to work the middle of November, 1939, three and a half months after the accident, but, because of inability to perform his duties, having pains in his right leg, lower back and shoulder under strain, and because the condition grew worse instead of better, he left his position in January of 1940 for the University of Minnesota. At the University he swam for relaxation and had diathermy and hydrothermy treatments until June, when he returned to the Park District, where he worked until September 1, 1941, but his condition did not permit full efficiency and he had "to go easy." His lower back and leg bothered him at the time of the trial, when as playground instructor for the Board of Education, requiring less physical exertion than his prior work, he received a little over $138 per month. In the accident he suffered a bruised, swollen and discolored left shoulder and lacerations and bruises of his ankle and legs, wrenched, torn and stretched ligaments and muscles, and some hemorrhage under the muscles of the calf and hardening of the calf of the right leg. His actual expenses were $1,974.25; including $96.25 for hospital, $358 for doctors and $560 for three and a half months loss of work at the maximum of $160 per month, and an additional sum of $960 being for six months which he spent at the University of Minnesota in 1940.

Defendant contends the court erred in refusing to direct a verdict on Count 1 and in refusing judgment for defendant notwithstanding the verdict at the close of all the evidence, saying there was no evidence of a negligent breach of duty on its part. The court had directed a verdict for defendant at the close of plaintiff's case on Count 2 and there is no cross-appeal. Defendant, however, introduced evidence in defense of its position that it had exercised the highest degree of care to make the plane safe for passengers and the jury was instructed thereon. This was the subject matter of the stricken Count 2. Under these circumstances we believe Count 2 was reinstated and we shall proceed to deal with this appeal as though the verdict had not been directed on that count.

The evidence is that after the crash United States Department of Commerce inspector sealed and took charge of the motor and a later examination showed that the cam gear was broken; and that a motor could not operate without a cam gear, since it controlled the timing. It appears from that evidence and inferences that the cam gear broke when in operation. The defendant admits, and this court has held in somewhat comparable circumstances (*McCusker v. Curtiss Wright Flying Service*, 269 Ill. App. 502), it is a common carrier and a presumption of negligence accordingly arises. *Toledo, W. & W. R. Co. v. Beggs,* 85 Ill. 80, 83; *Smith v. O'Donnell,* 215 Cal. 714, 12 P. (2d) 933. That presumption was sufficient warrant for denial by the court of defendant's motion for directed verdict on both counts and for judgment notwithstanding the verdict. The question is, therefore, whether the defendant showed that it fulfilled its duty of the highest degree of care as a common carrier, by furnishing a competent pilot and rendering the plane airworthy. *Toledo. W. & W. R. Co. v. Beggs; Smith v. O'Donnell.*

The evidence showed that the pilot had several years flying experience, was licensed by the Department of Commerce as both pilot and mechanic and had, during the flight involved, done everything which could be reasonably expected of him after the motor failed, to bring the plane and passengers to a safe landing. We believe, accordingly, that defendant has met its burden with respect to its duty to furnish a competent pilot.

Defendant introduced evidence to show that no witness, including the experts in this case, had ever experienced a broken cam gear and that such an accident was extraordinary; that the plane was built about 1932, was owned by the American Air Lines and had been owned by defendant for about two years; and that at the time of the accident it had flown about 2,650 hours and was equipped with Lycoming motors which sometimes run over 10,000 hours and require overhauling every 300 hours. The log book required by the Department of Commerce for the motor involved, introduced by defendant, shows a major overhaul February 1, 1937 at 2,519 hours; and an overhaul in April, 1939 at 2,642 hours, consisting of a disassembling of the entire motor, installation of new parts, reassembly of the bearings, overhauling magnetos, magnefluxing of the master rod and all other steel parts and reassembly by mechanics Kopp and Smith who signed the overhaul record and who were licensed by the Department of Commerce and worked together 200 hours on each motor. After the last overhaul and before the accident, the plane was flown an additional 8 hours and 20 minutes, and on June 11, a test flight was made after the plane had been relicensed by the Department of Commerce, and the plane flown in various positions and observations made. It appears that the licenses for planes run from year to year and before renewal, inspection and replacement of worn parts is required by the government inspector; that the government inspection is made upon a record of previous

compulsory Company inspection; that the plane was inspected by a licensed mechanic every 100 hours of flight and every 20 hours was greased, oil changed, valves checked and the engine and exerciser tested; and that prior to and on the day of the accident the plane made four flights of about 20 minutes each and the required testing of the motors before and during taxiing and before take-offs, disclosed no defects.

There was evidence that when examined after the accident the cam gear bore a yellow paint mark which indicated that it had been magnefluxed; that magnefluzing is a process of electrolysis to determine interior flaws in steel; that the process of bathing steel parts in acid is a better process, but that this is a matter of opinion and that magnefluxing is recognized as a valid, practical test.

It would appear from the evidence that if the overhauling by the mechanics was properly accomplished, that defendant had established a good defense. A vital question was the condition of the cam gear. It was magnefluxed, and apparently by Kopp and Smith competent mechanics, and marked with yellow paint to designate soundness and approval. Plaintiffs point out, however, it was not sound and that the unsoundness should have been detected and that, if the magnefluxing was properly done, any defect would have been disclosed. The mechanics were not produced as witnesses by defendant because its president said they were busy in New York, doing national defense work for the American Air Lines and could not be spared. This is hardly an adequate excuse for men with flying facilities at hand. The court would have undoubtedly accommodated its time to any arrangement which would have permitted these important witnesses to fly from New York to testify if, for some reason, their depositions could not have been taken. The evidence is that when they worked on the overhauling they were employees of the Ameri-

can Air Lines and worked on the motors of defendant's plane on their own time, evenings and after finishing their work for the Air Lines at 3 p. m. and on Saturday and Sunday afternoons. We believe under the circumstances and in the absence of these witnesses, the jury could have believed with justification that defendant's conduct did not measure up to the requisite standard of highest degree of care. They may have inferred that the mechanics were not as alert or as able or careful, after their day's or week's work for the regular employer, and that defendant should have recognized this fact. Common carriers, especially those transporting people through the air, cannot rely upon government inspections for fulfillment of their duty.

We are satisfied the jury was justified under the circumstances of this case in finding the defendant guilty. It follows, therefore, that we do not believe that plaintiff's reference to an "insurance doctor" prejudiced the defendant on the question of its guilt, although it may have affected the allowance of damages. The judgment, after remittitur, however is supported by the proof of plaintiff's damages and we are of the opinion it should be and hereby is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and BURKE, J., concur.