[Civ. No. 17335. Second Dist., Div. One. Mar. 10, 1950.]

CHARLOTTE SMALL, Respondent, v. TRANSCONTINENTAL & WESTERN AIR, INCORPORATED (a Corporation), Appellant.

Crider, Runkle & Tilson for Appellant.

Moore & Fisher for Respondent.

DRAPEAU, J.—Plaintiff was a fare-paying passenger on a TWA airplane flying from Wichita, Kansas, to Los Angeles. It was her second time in the air, for she was traveling on a round-trip ticket, and had a short time before gone from Los Angeles to Wichita.

Plaintiff testified that after the plane left Amarillo it commenced to roll and pitch; that some of the passengers were airsick; and that she was apprehensive of her safety and worried because the sign directing passengers to fasten their seat belts was not illuminated.

The captain and the copilot of the ship testified that the flight was routine, on a regular scheduled course; that it was not rough; and that they had no notice of adverse flying conditions anywhere along the route.

About halfway between Amarillo and Albuquerque, the plane encountered a downdraft. Running into a rapidly descending current of air, the ship dropped almost straight down, and then abruptly surged up again on an ascending air current. The drop was so fast that the airline hostess flew to the roof of the plane, and then fell to the floor, covered with coats. Most of the passengers, like men on flying trapezes, shot out of their seats, up in the air, and then down on the floor, or into other seats not their own.

Plaintiff was thrown out of her seat and to the floor. She was badly injured. Her arm was broken; and, later on, she had to have an operation for an intestinal obstruction. She was given first aid and hospitalized at Albuquerque, and brought to Los Angeles a few days later.

In Los Angeles her arm was set and was in traction for 28 days. She was in the hospital for some time, and kept from her work for a longer time, and she has permanently lost about 15 per cent of the use of her shoulder.

Her action for personal injuries was tried by jury, with verdict and judgment for $7,500. Motions for nonsuit and for a new trial were denied.

Plaintiff's principal claim of negligence is that the flight became rough, and that the iluminated sign at the front of the airplane cabin "Fasten Seat Belts" was not turned on. Defendant concedes that the sign was not on, but contends there was no necessity for it; that the flight was smooth and

uneventful until, suddenly, without warning, the downdraft was encountered. Defendant contends that, therefore, plaintiff's injuries were because of an act of God, and that it was error for the trial court to deny defendant's motions for nonsuit and for a new trial. In support of this position, defendant quotes the following remarks of the court in deciding the motion for nonsuit:

"The Court: There is only the proof the plaintiff was going up and down sufficiently to cause the plaintiff to be uncomfortable and to be thrown around in her seat.

"Mr. Tilson: She did not say 'thrown around.'

"The Court: She did not use those words, but she illustrated words of that sort by the movement of her body, on the witness stand, as she demonstrated it, . . .''

This statement helps the plaintiff's case on appeal. It adds to the record her gestures and movements, to amplify her verbal description of the roughness of the flight before the accident.

Substantial evidence in the record supports the verdict. Therefore, under elementary rules of law, this court is bound by the verdict. Trial by jury in a proper case is the right of every citizen, guaranteed by the Constitution of the United States and by the Constitution of California. Our California Constitution declares that that right shall "remain inviolate."

■ Whenever an order of a judge directing a nonsuit infringes in the slightest degree upon the constitutional power of a jury to determine an issuable fact, that order is void. The Supreme and appellate courts of California have struggled to present this fundamental principle to the trial bench and to the bar of the state ever since adoption of the Constitutions of 1849 and 1879. It would do no good here to cite any of the multitude of California decisions upon this subject. They are easily found in any of the legal research books used by the profession.

■ The law of negligence in the operation of airplanes carrying passengers is developing now, as it did with railroads more than half a century ago. It appears now to be common knowledge with regard to the operation of airplanes that downdrafts, which vary in effect according to their extent, are not uncommon. It is true that such a manifestation of nature, like the weather, is commonly referred to as an act of God. So far as the weather is concerned it cannot be denied that airplane operators take every precaution against weather hazards. If it is possible to determine or even suspect that

under certain conditions downdrafts are likely or possible, it would appear to be the duty of a prudent operator to take whatever precautions are necessary or available to guard against dangerous consequences.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.