DORA R. CUDNEY, Appellant, v. MIDCONTINENT AIRLINES, INC., and CLYDE ELMER LUCKHURST, Respondents, No. 42802—254 S. W. (2d) 662.

Court en Banc, February 9, 1953.

*Coburn, Storckman & Croft, White & Hall* and *Clem F. Storckman* for appellant.

924

*Lashly, Lashly & Miller* and *John H. Lashly* for respondents.

BARRETT, C.—On the 6th day of September 1946 Mrs. Dora R. Cudney, then sixty-three years of age, was, for her first trip in an airplane, a passenger on the Midcontinent Airlines' twenty-one passenger plane. She sat in single seat number twelve on the right-hand side of the plane. The plane was a DC-3 and there were nineteen other passengers, a pilot, a co-pilot and a stewardess. The flight was from Kansas City to Omaha, 164 miles, normally a fifty-six minute trip. The plane was to have left Kansas City at 3:19 A. M., but there was a short delay and the plane left the airport about 3:23 A. M. It was raining when the plane took off and the weather forecast was high scattered, light thundershowers over a wide area from Kansas City to Omaha. The speed of the plane was 168 air miles an hour, and it was flying below the thundershowers at an altitude of 3000 feet. There was "light turbulence" and the air was "choppy," and as soon as the plane was aloft the pilot lighted the "Fasten Seat Belts" signal. In the vicinity of Tarkio the plane suddenly dropped, jerked and jolted, and Mrs. Cudney was thrown from her seat, landing across the aisle into the double row seats and onto another passenger. The pilot veered the course of the plane for a minute or two, eight or nine miles, and the plane proceeded on to Omaha without further untoward incident.

To recover damages for her resulting personal injuries Mrs. Cudney instituted this action against the Midcontinent Airlines and the captain or first pilot, Clyde E. Luckhurst. The principal allegation of her petition as to liability was that near Tarkio "by reason of the negligence and carelessness of the defendant corporation, its agents, servants and employees, and defendant Clyde Elmer Luckhurst, said airplane was caused, suffered, allowed and permitted to lurch, jerk and move about and through the air in such a violent and unusual manner as to cause plaintiff to be thrown about and out of her seat and injured * * * that defendant's airplane was in the sole and exclusive control of the defendants, who possess superior knowledge or superior means of information as to the cause of the occurrence, and that the injury which plaintiff suffered would not ordinarily have happened if those in charge had used due care." At the close of the plaintiff's evidence the trial court directed a verdict for the pilot, Luckhurst. At the close of all the evidence Midcontinent Airlines' liability was hypothesized and submitted to the jury upon the basis of the relationship, passenger and carrier, and the circumstances that in the vicinity of Tarkio "said airplane suddenly and violently, and in a very unusual manner, jerked, lurched and moved through the air," thereby causing the plaintiff to be thrown from her seat and injured. The jury returned a verdict for the defendant airline company. Upon this appeal Mrs. Cudney claims that the trial court erred in the admission of evidence, in instructing the jury, in the court's conduct of the trial and in directing a verdict for the pilot Luckhurst. [664]

The respondent, Midcontinent Airlines, contends that the res ipsa loquitur doctrine is not applicable to the occurrence and attendant circumstances relied upon, and that, upon the whole record, the trial court should have directed a verdict for the airline as well as for its pilot, and that is the essential and meritorious question upon this appeal.

Upon the facts the airline's defense was twofold: first, that Mrs. Cudney was guilty of contributory negligence in that she failed to heed the warning signal to fasten or keep fastened her safety belt, and, second, that while there was light turbulence and flying was "choppy," weather conditions and flying were normal and, near Tarkio, the plane hit a downdraft, which neither the company nor the pilot could anticipate or avoid, causing the plane to suddenly drop about 100 feet, an occurrence not encountered every day but one which the pilots said they encountered occasionally, especially in thundershowers.

In addition to the relationship of passenger and carrier and the previously noted circumstances, the evidence upon which the plaintiff relied as establishing, prima facie, her cause of action and the defendants' liability was this: Mrs. Cudney said that she knew what the seat belts were for and what the warning signal meant and accordingly fastened her seat belt as soon as the plane was in flight and kept it fastened. She said that plane ride was "awful bumpy. I thought it was terrible." She said that she put her thumbs through the safety belt and laid back with her eyes closed, "I thought I am just going to hang on and let her buck." She was positive that she did not unfasten the seat belt and she does not know how she got out of the belt and was thrown from her seat and across the aisle, "after that terrific down force, or whatever it was that threw me out of my seat" she had a lapse of memory, "I would know something, then it would all fade out; then I would know something and it would fade out again." The passenger across the aisle upon whom Mrs. Cudney landed was Mrs. Cohen who had ridden commercial airlines for more than twenty years. She said that in the vicinity of Tarkio "There was a most unusual happening. * * * Something violent took hold of the plane and we seemed to turn completely over; that's the way it seemed to me; and as we went over with this jolt, that was the most violent thing that ever happened in my life, I thought that that was the end, * * * and the next thing I remember is that something struck me, and when I came to" it was Mrs. Cudney.

Two other passengers whose seat belts were not fastened were thrown from their seats into the aisle, pillows and blankets were displaced. The co-pilot said that it was a "severe jolt," displacing the carpet and some floor boards. Cigars were thrown from one man's coat pocket, another lost his cigarette lighter and the contents of the commissary compartment were displaced. A company mechanic

who inspected the plane said that there were "two damaged spots in the headliner, that's the portion directly above the seats. * * * and this hat rail or blanket compartment, it was slightly bent." He said that the floor boards were not damaged and that none of the seats or seat belts was damaged. He found, however, two 3/16th inch floor bolts sheared off or "knocked off by the seat, sir, it was on the opposite side of the aircraft."

 This is the occurrence and in substance the testimony and circumstances stated most favorably to the plaintiff and her theory of the defendants' liability. As has been said, the airline contends that res ipsa loquitur is not applicable to this occurrence and these circumstances, and, since there is neither pleading nor proof of specific negligence, that the trial court erred in not directing a verdict for both defendants at the close of all the evidence. If the doctrine applies the defendants' explanation of the occurrence, here the unanticipated, unavoidable, unpreventable downdraft, is not conclusive, the plaintiff, despite the explanations, is entitled to have her cause submitted to the jury if res ipsa loquitur is applicable to the occurrence and its attendant circumstances. McCloskey v. Koplar, 329 Mo. 527, 541, 46 S. W. (2) 557; Belding v. St. Louis Public Service Company, 358 Mo. 491, 215 S. W. (2) 506. Furthermore, it is necessary in this jurisdiction, in contrast with some other jurisdictions, to note and bear in mind that if the plaintiff relies upon **[665]** or proves specific negligence any consideration or discussion of res ipsa loquitur is beside the point. McGrath v. St. Louis Transit Co., 197 Mo. 97, 105, 94 S. W. 872; Belding v. St. Louis Pub. Serv. Co., supra. See also Goodheart v. American Airlines, 1 N. Y. S. (2) 288 and Phillips v. Vrooman, 361 Mo. 1098, 238 S. W. (2) 355. For this reason many of the cases relied upon by the parties are distinguishable and of but little value in determining the applicability of res ipsa loquitur to the immediate situation. From the viewpoint of this jurisdiction the following cases involved specific negligence and the discussions of res ipsa loquitur were not pertinent or persuasive. Herndon v. Gregory, 190 Ark. 702, 81 S. W. (2) 849; Boulineaux v. City of Knoxville, (Tenn.) 99 S. W. (2) 557; Morrison v. Le Tourneau Co. of Georgia, 138 F. (2) 339; Smith v. Pennsylvania Central Airlines Corp., 76 F. Supp. 940; Kamienski v. Bluebird Air Service, 389 Ill. 462, 59 N. E. (2) 853; Small v. Transcontinental & Western Air, (Cal.) 216 P. (2) 36 (failure to warn and signal to turn on "Fasten Seat Belts" sign). It is probable that the unofficially reported case of Hope v. United Air Lines (D.C. Mo.) 1937 U. S. Av. R. 179; 8 Jr. Air Law & C. 132, is distinguishable for this reason.

It is true, as the respondent contends, that a carrier of passengers by airplane is not an insurer of the passenger's safety (37 Va. L. R. 55, 56) and every commercial aviation accident is not presumed to be the result of negligence. Rhyne, Aviation Accident Law, p. 123.

However a commercial airline carrying passengers for hire is a common carrier and subject to the duties and liabilities of common carriers. Smith v. Pennsylvania Central Airlines Corp., 76 F. Supp. 940, 945; Kamienski v. Bluebird Air Service, 321 Ill. App. 340, 53 N. E. (2) 131; McCusker v. Curtiss Wright Flying Service, 269 Ill. App. 502, 521. While there are some cases to the contrary it is now generally accepted that res ipsa loquitur applies to certain aviation accidents both commercial and non-commercial providing all the required elements are present. Annotation 6 A. L. R. (2) 528; United States v. Kesinger, 190 F. (2) 529. The doctrine has been recently applied to the unexplained disappearance of a commercial airliner while in flight from Yakutat, Alaska to Seattle. Haasman v. Pacific Alaska Air Express, 100 F. Supp. 1. It would serve no useful purpose to cite a large number of the cases but res ipsa loquitur has been applied to many instances of crashes, in landing, in take-off and in flight. Annotation 6 A. L. R. (2) 528. In some of the occurrences it was a fair and permissible inference that there was negligence with respect to the maintenance of the plane, structural defects (Bratt v. Western Airlines, 169 F. (2) 214), and in some it was a fair and reasonable inference that there was negligence on the part of the pilot in the operation of the plane. Seaman v. Curtiss Flying Service, 247 N. Y. S. 251; U. S. v. Kesinger, supra. But certain crashes and the inferences to be drawn from them are not plainly comparable to the occurrence involved here. It has become accepted, in the absence of natural perils, that crashes are not the ordinary perils of travel by air and that commercial airliners do not crash into trees and mountains if due care has been exercised. Smith v. Pennsylvania Central Airlines Corp., supra; U. S. v. Kesinger, supra; Smith v. Pacific Alaska Airways, 89 F. (2) 253. A more precisely comparable occurrence in which the application of res ipsa loquitur has come to be accepted in Missouri is the instance of a common carrier's, a streetcar or a bus, sudden and violent lurch, jerk or jolt causing the passenger to be thrown from his seat (Annotation 5 A. L. R. 1034; Redmon v. Metropolitan Street R. Co., 185 Mo. 1, 84 S. W. 26; Belding v. St. Louis Public Serv. Co., supra), and the determinative question here is whether there are any reasons why the rule should or should not apply to a similar occurrence upon a commercial airliner.

In Missouri, as elsewhere generally, the doctrine of res ipsa loquitur applies when "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; [666] (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." McCloskey v. Koplar, 329 Mo., l.c. 533, 46 S. W. (2), l.c. 557; Prosser, Torts, Sec. 43, p. 295. In this instance, for the

purposes of res ipsa loquitur, the instrumentality, the plane, was under the management and control of Midcontinent Airlines, a common carrier, and it is not necessary in the view we have taken to say whether it was also under the control of the pilot Luckhurst. It may be assumed that if knowledge of the cause of the occurrence was possible that the evidence or means of knowledge of the cause lay with the respondent rather than the plaintiff. The concern here is with the first element, whether the occurrence, the sudden and violent jerking, jolting drop of the plane, causing the plaintiff to be thrown from her seat, was one which ordinarily does not occur in the absence of negligence. Res ipsa loquitur is a part of the law of evidence, it is "merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case. Presumptions of fact, or those general propositions of experience which form the major premises of particular conclusions of this sort, usually are for the jury. The court ordinarily confines itself to considering whether it can say that there is no such presumption, or, in other words, that such accidents commonly are not due to negligence." Holmes, J. in Graham v. Badger, 164 Mass. 42, 47, 41 N. E. 61.

The reason that res ipsa loquitur is applicable to the sudden or violent jolts and jerks of streetcars and busses, aside from the fact that they are common carriers, is that over the years it has come to be accepted as the common experience of mankind that such occurrences do not result except through negligence, either in the operation or maintenance of the instrumentalities. Is it possible, in the present, to say that it is now the common experience of mankind that commercial airliners do not suddenly lurch and drop in flight and then resume their course without mishap except through failure to exercise due care? If so there is no reason why the doctrine should not apply to airliners as it does to other common carriers. Rochester Gas & Electric Corp. v. Dunlop, 266 N. Y. S. 469, 473; United States v. Kesinger, supra; Bratt v. Western Airlines, supra. The action was instituted against the pilot as well as against the company and there is neither claim nor proof of circumstance tending to support an inference of negligence in the maintenance of the airline, or of defect in the plane or any of its appurtenances (Kamienski v. Bluebird Air Service, supra), if an inference of negligence is to be drawn from the occurrence, it is of necessity in the operation of the plane. The lurching drop was sudden and violent, unusual it may be said, and the plaintiff seeks to draw the necessary inference of negligence from the mere fact of the occurrence, its catapulting

the plaintiff from her seat and the additional circumstances that there were thundershowers, the air was turbulent and choppy and the pilot did veer from his set course immediately after the drop. Upon cross-examination it was developed that the pilot could deviate from the course and flight plan as much as twenty-five miles without reporting the fact. It was sought to be elicited that in turbulent weather airlines often gave passengers the option of taking another or later flight. From these circumstances it is urged that the defendants may have been negligent in flying in the thundershower area and in the path of the downdraft, if in fact the downdraft was the cause of the sudden and unusual movement of the plane. But, there is no evidence that flying conditions were abnormal or that there was any hazard attached to flying in the wide thundershower area or that it was possible to forecast danger of flying into downdrafts under the [667] prevailing conditions. There is no evidence that deviation from course or any other action on the part of the pilots would have either anticipated or avoided the downdraft, if that caused the dropping movement of the plane. "It appears now to be common knowledge with regard to the operation of airplanes that downdrafts, which vary in effect according to their extent, are not uncommon. It is true that such a manifestation of nature, like the weather, is commonly referred to as an act of God. So far as the weather is concerned it cannot be denied that airplane operators take every precaution against weather hazards. If it is possible to determine or even suspect that under certain conditions downdrafts are likely or possible, it would appear to be the duty of a prudent operator to take whatever precautions are necessary or available to guard against dangerous consequences," in that case failure to signal "Fasten Seat Belts." Small v. Transcontinental & Western Air, (Cal.) 216 P. (2), l.c. 37; Cohn v. United Air Lines Transp. Corp., 17 F. Supp. 865. This is not to say that the occurrence involved here was caused by a downdraft or any other known specific cause, but it is to say that there are other causes of planes jolting and dropping for a distance than negligence in their operation and there is no circumstance in this record from which it is a fair and reasonable inference that this occurrence was due to negligence. Smith v. Whitley, (N.C.) 27 S. E. (2) 442. In short, it is not possible at this date, as it may be in another day, to say that it is the common experience of mankind that commercial airliners do not lurch and drop for some distance except for negligence in the operation of the plane and, therefore, it is not now possible to confidently apply the doctrine of res ipsa loquitur to the mere occurrence in the circumstances relied upon by Mrs. Cudney, as it is in the instance of certain crashes,—there is now no such balance of probabilities. Annotation 6 A. L. R. (2), l.c. 531; Rochester Gas & Electric Corp. v. Dunlop, supra; Haasman v. Pacific Alaska

Air Express, supra; U. S. v. Kesinger, supra. The plaintiff was not entitled to a res ipsa loquitur submission of her cause, accordingly the judgment is affirmed.

In PER CURIAM filed the Opinion of *Barrett, C.,* modified on Court's Own motion and cause is reversed and remanded. As above modified the opinion of *Barrett, C.,* is adopted as the opinion of the Court en Banc.

*Ellison, Hollingsworth, Dalton* and *Leedy, JJ.,* and *Conkling, C. J.,* concur; *Hyde, J.,* not sitting; *Tipton, J.,* concurs in separate opinion filed.

TIPTON, J., (concurring).—█ The theory of the appellant in this court is that the pilot's negligence and carelessness in the handling of the airplane by permitting it to lurch, jerk and move about through the air in a violent and unusual manner caused her to be thrown out of her seat and injured. The pilot could only be negligent in the operation of the airplane, under the res ipsa loquitur rule, and could not be negligent for the maintenance of the airplane as the airplane was not under his exclusive control. This is the theory upon which the majority opinion was written. I, therefore, concur with that opinion.

However, I think that if the appellant was using her seat belt, as she testified, a res ipsa loquitur rule against the Midcontinent Airlines would apply if she were thrown from her seat. If a passenger is strapped in her seat by the seat belt and is thrown from her seat and injured, then, in my opinion, the jury could say that such an occurrence is one that "does not ordinarily happen if those in charge use due care." McCloskey v. Koplar, 329 Mo. 527, l.c. 533, 46 S. W. 2d 557, 92 A.L.R. 641. If this had been the appellant's theory of her case, I believe a res ipsa loquitur case would have been made for the jury [668] even if the airplane was caused to jerk by a downdraft. I believe the jury could say that the injury was caused by a defective belt or seat.

█ PER CURIAM.—The opinion of Barrett, C. is modified on the court's own motion by striking out the words "accordingly the judgment is affirmed", and by adding the following: Since there are some circumstances shown by the record in this case from which inferences of specific negligence might be drawn and since this is the first time in which this court has held that the doctrine of res ipsa loquitur does not apply where a passenger in an airplane has been injured under such circumstances as those shown by the record in this case, the judgment is reversed and the cause remanded so

that plaintiff may plead specific negligence, if she is so advised. As modified the opinion is adopted as the opinion of the court.

*Ellison, Hollingsworth, Dalton,* and *Leedy, JJ.,* and *Conkling, C. J.,* concur; *Hyde, J.,* not sitting; *Tipton, J.,* concurs in separate opinion filed.