WESTERN CATTLE BROKERAGE COMPANY,
Appellant, v. GATES.

Division One, October 11, 1905.

1. **APPEALS: Nunc Pro Tunc Order After Appeal: Exceptions:
No Appeal.**    Appellant's abstract contained none of the evi-
dence contained in the bill of exceptions, but simply stated
that facts tending to support the allegations of the petition
were introduced, etc.    Afterwards appellant procured a *nunc
pro tunc* order in the circuit court, correcting the record
so as to show that the case was tried in division 5 of the court
and the motion for new trial overruled by the judge thereof
and time given to file a bill of exceptions, and that thereafter
the judge of that division became judge of division 3 of the
same court, and as such approved the bill within the time pre-
viously allowed by him, and ordered the bill filed in division 5,
and respondent excepted to that action and contends that this
judge had no power to settle the bill of exceptions or to order
it filed therein, and filed a bill of exceptions, but did not appeal
from the order complained of. *Held*, that as these *nunc pro tunc*
proceedings took place after this appeal was taken, the mat-
ters complained of in connection therewith are not before this
court for review.

2. ———: **Skeleton Bill.** Under Rule 6 which provides that "it
shall not be necessary to set out the evidence in the bill of ex-
ceptions, but it shall be sufficient to state that there was evi-
dence tending to prove the particular fact or facts," a motion
to dismiss the appeal will not be sustained if the abstract filed
sets out the pleadings, and recites that there was a trial on the
merits, a verdict for the respondent, a motion for new trial
filed and overruled, an appeal allowed and overruled, the ap-
proval and filing of a bill of exceptions within time, and sets out
in full the instructions and states there was evidence tending to
support the petition and the answer.

3. ———: **Instructions: No Exceptions.** Where the bill of exceptions contains no exceptions saved to the action of the court in refusing certain instructions asked by appellant, that ruling of the court is not open to review on appeal.

4. **FRAUD: Representations: Knowledge.** One who makes representations which he does not know to be true, and conscious of the fact that he has no knowledge on the subject, to another who has no knowledge as to the truth or falsity of the representation, is as much guilty of fraud as if he had actual knowledge of the falsity of the statement; and if the party to whom the representation is made relies upon it and is injured thereby, he is entitled to recover from the party making the representation in an action of fraud and deceit.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

*Ward & Hadley* for appellant.

(1)  The court erred in giving defendant's instructions 2 and 3. If a false representation is made and is relied upon and is a material inducement, it makes no difference that other motives or causes contributed. It is equally well-settled law that if several representations are made to induce a party to enter into a contract and any one of them is false and operates as an inducement, an action of deceit may be maintained, though the representations that are true have operated as an inducement. On the same principle, if a party to whom a false representation is made to induce him to enter into a contract does so, partly relying upon such representations, he is entitled to relief on the ground of fraud, though he may also have relied partly upon an examination or investigation made by himself or by others for him. Burnham & Co. v. Elmore, 66 Mo. App. 617; Cahn v. Reed & Bungart, 18 Mo. App. 130; Saunders v. McClintock, 46 Mo. App. 216; Becraft v. Grist, 52 Mo. App. 589. It is also established law that a party to

whom false representations are made cannot treat them as fraudulent, if he relies solely upon a guaranty and not upon representations, but the mere fact that a party takes a guaranty does not bar relief on the ground of false representations, if he relied partly upon representations. Holdom v. Ayer, 110 Ill. 448; Elphick v. Hoffman, 49 Conn. 331; Busch v. Wilcox, 82 Mich. 315. (2) The court erred in giving instruction 5 at request of defendant. This instruction says that Gates must have known that the number of steers set out in said mortgages was untrue, and that Gatch and Buckingham did not own the number therein represented. This is not the law. Koontz v. Kaufman, 31 Mo. App. 397; Hamlin v. Abell, 120 Mo. 188; Paretti v. Rebenack, 81 Mo. App. 494. This instruction also conflicts with other instructions given for defendant and plaintiff on the subject of knowledge. In other words, this instruction called for actual knowledge on the part of Gates as to the representation as to the number of cattle, while the other instructions given for plaintiff and defendant made defendant liable if he were conscious of the fact that he did not have any knowledge at all as to the other representations charged in plaintiff's petition.

*R. E. Ball* and *Johnson & Lucas* for respondent.

(1) The instructions given for respondent, numbered 2 and 3, are plain and explicit. The expression of one state of facts is the exclusion of every other. If plaintiff relied upon the statements of third parties in making its loan or purchase of notes, it did not rely on those of Gates; and likewise if it was relying upon an agreement with Gates and his financial ability to make it good, that excluded the idea of any representations as to value, quantity or kind. It is true that reliance can be had upon a combination of statements, facts or circumstances, but these instructions are not complex.

Number 2 says if respondent relied on statements of third parties no recovery can be had of Gates. Number 3 says if reliance was had upon an agreement with Gates to take up the notes, and upon his financial ability to do so, a recovery cannot he had of him for false representations as to value, kind and quantity of cattle. These instructions declared the law. Anderson v. McPike, 86 Mo. 293. (2) If instructions 2 and 3, given for defendant, were defective as alleged by appellant, the defect is fully cured by instructions 1 and 2 given at request of appellant. Meadows v. Ins. Co., 129 Mo. 76; Anderson v. Railroad, 161 Mo. 411; Perrette v. Kansas City, 162 Mo. 338. (3) As to appellant's attack upon instruction 5 given at request of respondent, it is to be observed that appellant did charge a representation as to ownership of cattle. This instruction, in connection with instruction 2 given for appellant, declares the law.

MARSHALL, J.—This is an action of fraud and deceit. The plaintiff claims $50,000 damages on account of alleged false and fraudulent representations of the defendant, whereby the plaintiff was induced to purchase from the defendant five promissory notes, executed by C. J. Buckingham and Samuel Gatch, to the order of E. J. Buckingham, and endorsed by him, aggregating $47,976, the plaintiff paying the defendant therefor the sum of $45,794.55. There was a verdict and judgment for the defendant, and the plaintiff appealed.

The abstract of the record sets out in full the petition, and then alleges that the answer was a general denial. The abstract then recites that there was a trial on the merits, a verdict for the defendant, a motion for a new trial filed and overruled, and an appeal allowed to this court, time granted to the plaintiff to file a bill of exceptions, and that the bill was filed within the time allowed. The abstract of the record then sets out the

bill of exceptions in full.  No evidence or abstract or
digest or statement of the evidence is contained in the
bill of exceptions.  The only reference to the facts ad-
duced upon the trial being in the following language:
"The plaintiff introduced evidence tending to support
the allegations of its petition.  The defendant intro-
duced evidence tending to support the allegations of
his answer."  The bill of exceptions then recites that
the plaintiff "prayed the court to instruct the jury as
follows."  The instructions asked for the defendant
and given or refused by the court are then set out.  The
bill of exceptions contains no exception to the action of
the court in refusing instructions asked by the plaintiff.
It contains an exception by the plaintiff to the giving of
the instructions asked by the defendant and given by
the court.  The bill of exceptions then recites: "There
was evidence introduced in the case by the respective
parties to prove the facts upon which the in-
structions given by the court were based."  The
verdict of the jury, the motion for new trial,
the overruling of the same, the giving of time for
the filing of the bill of exceptions, and the filing of the
bill of exceptions, within the time given, are then set
out.  This constitutes the whole bill of exceptions and
the whole abstract of the record.  Heretofore the de-
fendant moved the court to dismiss the appeal, because
no bill of exceptions was filed within the proper time,
and for other reasons stated in the motion.  The court,
In Banc, overruled the motion to dismiss the appeal, on
the fourth of March, 1903.  Thereafter, as appears by
an additional abstract of the record filed by the respon-
dent, certain steps were taken by the plaintiff to pro-
cure a *nunc pro tunc* entry in the circuit court, correct-
ing the record so as to show that the time for filing the
bill of exceptions was extended by the court, and also

showing that the case was tried in Division No. 5 of the Circuit Court of Jackson county, presided over by Hon. W. C. Teasdale the then judge of that division of the court; that thereafter, Judge Teasdale became the judge of Division No. 3 of the court and Hon. A. F. Evans became judge of Division No. 5; that the motion for a new trial was overruled by Judge Teasdale while the judge of Division No. 5, and that the bill of exceptions was approved and signed by Judge Teasdale while the regular judge of Division No. 3 of said court and was filed in Division No. 5 after Judge Teasdale had ceased to be the judge thereof. The defendant's main contention now is that the circuit court erred in entering the *nunc pro tunc* order, and that judge Teasdale had no power to settle the bill of exceptions after he ceased to be the judge of Division No. 5, and had no power, as judge of Division No. 3, to order a bill of exceptions filed in Division No. 5. The defendant saved exceptions by a separate bill of exceptions to the subsequent proceedings in the case, but did not appeal from the order and judgment complained of, and as they took place subsequent to the appeal taken by the plaintiff, those matters are not properly now before the court for adjudication and will not be further considered in the case.

The case presented, therefore, is, the petition of the plaintiff, the answer of the defendant, which was a general denial, the statement that the plaintiff introduced evidence tending to prove the allegations of the petition and the defendant introduced evidence tending to prove the allegations of the answer, and that the respective parties introduced evidence tending to prove the facts upon which the instructions given by the court were based, and the instructions given and refused by the court.

The case is, therefore, presented in compliance with rule 6 of this court, which is as follows: "For the pur-

pose of reviewing the action of the trial court, in giving and refusing instructions, it shall not be necessary to set out the evidence in the bill of exceptions ; but it shall be sufficient to state that there was evidence tending to prove the particular fact or facts. If the parties disagree as to what fact or facts the evidence tends to prove, then the evidence of the witnesses may be stated in a narrative form, avoiding repetition and omitting all immaterial matter.''

The facts stated in the petition may be summarized as follows: The plaintiff is a domestic corporation, engaged in the business of broker, dealing in cattle paper. The defendant and one Vail were and are partners under the firm of Vail & Gates. On the 5th of June, 1899, the defendant had in his possession five promissory notes made by Buckingham and Gatch, to the order of E. J. Buckingham, and by him endorsed, aggregating $47,976, which purported to be secured by chattel mortgages on 1,732 head of cattle, and which cattle were in various pastures in the State of Kansas. The defendant on said date induced the plaintiff to purchase said notes for the sum of $45,794.55. The petition charges that the defendant falsely and fraudulently represented to the plaintiff that the makers of said notes, secured as aforesaid, owned 1,732 head of cattle covered by said mortgages; that all of said cattle were what is known as Panhandle cattle, and had been shipped from the Panhandle of Texas in 1898; would weigh from 750 to 850 pounds each, and that they were worth $35 per head, and that the makers of said notes had $10,000 of their own money invested therein, and that the makers of said notes owned the 1,732 head of cattle covered by said mortgages.

The petition then alleges that all the said representations and statements were false and fraudulent, and known to the defendant to be such at the time he made them; that the makers of said notes owned only 1,612

head of cattle; that they were not Panhandle cattle; that they were not shipped from the Panhandle of Texas in 1898, nor at any other time, and never were in the Panhandle of Texas; that said cattle did not weigh from 750 to 850 pounds each and would not exceed 450 pounds each; that they were not worth $35 per head and were worth not exceeding $10 per head; that the makers of said notes did not have $10,000 of their own money invested in said cattle, or any considerable sum of their own money so invested, but that the makers and endorser of said notes were then, and now are, insolvent; that the character of the cattle as represented by the defendant to the plaintiff was of much higher grade than the cattle owned by the makers of said notes; that said notes were not paid at maturity; that plaintiff had to pay $3,500 pasturage for said cattle in order to get possession of them; that plaintiff got possession of 1,612 head of cattle and, after the commencement of this suit, sold the same under said mortgages and became the purchaser thereof, for the sum of $22,729.75, and that after deducting the costs of foreclosure and the amount paid for pasturage, there remained the net sum of $18,982.79 applicable to the payment of said notes; that after becoming said purchaser, the plaintiff sold said cattle and realized therefrom the net sum of $29,305.06.

The petition then concludes with a prayer for $50,000 damages. As above stated the answer is a general denial.

Under this state of the pleadings and under the statements in the bill of exceptions that the plaintiff introduced evidence tending to support the allegations of the petition, that the defendant introduced evidence to support the allegations of the answer, and that the respective parties introduced evidence tending to prove the facts upon which the instructions given by the court were based, the plaintiff claims that the court should

have given the instructions asked by the plaintiff and refused by the court and that the court erred in giving the instructions asked by the defendant and given by the court.

The bill of exceptions contains no exception saved by the plaintiff to the action of the court in refusing the instructions asked by the plaintiff, and therefore that ruling of the court is not open to review here.

In order to correctly understand the ruling of the court it is necessary to reproduce in full the instructions given for the plaintiff and for the defendant, with the exception of the instructions given for the plaintiff relating to the measure of damages, which it is not necessary to reproduce inasmuch as the verdict was for the defendant.

The instructions given for the plaintiff were as follows:

"1. Plaintiff is entitled to a verdict in this case against the defendant, Charles W. Gates, if the jury find from the evidence the following facts: First. That on June 5th, 1899, the plaintiff bought from Gates, or from E. J. Buckingham, or from both of them, five promissory notes aggregating $47,976, signed by C. J. Buckingham and Samuel Gatch and endorsed by E. J. Buckingham, dated May 15th, 1899, payable November 15th, 1899, and bearing 8 per cent interest per annum after maturity, paying therefor $45,794, which was more than the notes were in fact worth. Second. That Gates for the purpose of inducing plaintiff to buy the notes and convincing it that they were well secured, either orally or in writing, or in both ways, made, as statements of facts, any one or all of the following representations: (a) That said notes were secured by mortgages upon 1,732 head of cattle; (b) that they were what is known as Panhandle cattle; (c) that they were shipped from the Panhandle of Texas in 1898; (d) that they would weigh from 750 to 850 pounds each, and that

they were worth $35 per head; (e) that Buckingham and Gatch had $10,000 of their own money invested in the cattle. Third. That any or all of said representations were false and fraudulent and plaintiff upon the faith of and reliance upon same parted with his money.

"2. If, to induce the plaintiff to act thereon, Gates falsely made any one of the representations of the character and for the purposes as submitted in the foregoing instruction 1, knowing at the time that it was false, then the jury must find that it was fraudulent. Or if Gates, without knowledge of its falsity, did make any one of such representations to induce plaintiff to act thereon, assuming or intending to convey the impression that he had actual knowledge of its truth though conscious that he had no such knowledge, then such representation was just as fraudulent as if he had made it actually knowing that it was false. If any representation was so made and was fraudulent, as that word is herein defined, then Gates cannot claim that he did not intend thereby to actually injure or to actually defraud plaintiff, or that he was innocent and acted honestly and in good faith in relation thereto."

The instructions given for defendant were as follows:

"1. The burden of proof rests upon the plaintiff to establish by a preponderance or the greater weight of the evidence, each and every material fact necessary to entitle the plaintiff to recover. And the burden of establishing its claimed right to recover rests upon the plaintiff throughout the entire case and does not at any stage of this action shift upon the defendant.

"2. If the jury believe from the evidence that the plaintiff relied, in making the loan to Gatch & Buckingham, upon the report of George Neal or upon representations and statement made by E. J. Buckingham, then the plaintiff cannot recover in this action against the defendant and your verdict must be accordingly.

"3.  If the jury should find and believe from the evidence that the plaintiff in purchasing the notes and mortgages in question, relied, in doing so, upon the agreement of the defendant claimed to have been made to take up the same, if not satisfactory, and upon defendant's financial ability and standing to make good such agreement if same was made; and if the jury should further find that but for the plaintiff's reliance on the financial standing and ability of defendant and his said alleged agreement, the plaintiff would not have purchased said notes, then plaintiff cannot recover in this action and the verdict should be for the defendant.

"4.  The plaintiff is not entitled to recover anything in this action on account of pasture bills which it may have paid to secure possession of said cattle, or for expenses laid out and incurred by it in caring for said cattle after taking possession of the same.

"5.  In order for plaintiff to recover anything in this action, upon the ground of a misrepresentation by the defendant as to the number of steers owned by Gatch and Buckingham on the 5th day of June, 1899, the plaintiff must establish by a preponderance of the evidence that Gatch and Buckingham did not in fact own the number of steers recited in said mortgages; that C. W. Gates knew the number of steers set forth in the mortgages and knew that the same was untrue, and that said Gatch and Buckingham did not at that time own the number therein represented, and knowing all of such facts, represented to the plaintiff that the said Gatch and Buckingham did in fact own the number of cattle recited in said mortgages and the plaintiff relied upon such representations in making said loan.

"6.  Even though you should find from the evidence that the defendant represented to the plaintiff that the steers would weigh from 750 to 850 pounds each, nevertheless, if you should find that the defendant had never weighed steers and did not know what

their correct weight was, but said statement was made merely as his individual opinion as to their weight, then and in that event, such a statement was not a representation of fact, but merely an expression of opinion, which, even though false, forms no ground whatever for recovery on the part of the plaintiff in this action.

"7. Even though you should find from a preponderance of the evidence in this case that the defendant represented these steers as being Panhandle steers, nevertheless, if you should further find that the term 'Panhandle steers' is applied to animals of great diversity of grade, kind, breeding and value, then, so far as such representation is concerned, said term is meaningless and its wrongful use by the defendant as descriptive of the steers in question furnishes no ground for recovery by the plaintiff in this action.

"8. If you believe from the evidence that on the 5th day of June, 1899, all of the country lying north and west of the quarantine line in the State of Texas was generally known among cattle men as the 'Panhandle' and that the stock shipped therefrom was generally known as Panhandle cattle, then there can be no recovery herein on the ground that the defendant misrepresented that the cattle were shipped from the Panhandle and that they were Panhandle steers.

"9. If you believe from the evidence that the cattle were known among cattle men as Panhandle cattle, then your finding on that issue will be for the defendant.

"10. If you find and believe from the evidence that the steers in controversy were shipped from what was commonly known among cattle men as the Panhandle of Texas your finding must be for the defendant upon that issue, irrespective of the quality or value of said steers.

"11. The term 'Panhandle' for the purpose of this case must be understood in the sense in which it

is generally used among cattle men. Although you may believe that, geographically, the term is applied to a limited area in the northwestern portion of the State, this does not authorize you to so apply it in this case. It is for the purposes of this case to be used as generally understood among cattle men, and embraces all that portion of the State to which it is so understood to apply, without reference to how it may be used by dictionaries, maps or geographies.

"12.  Even though you should find for the plaintiff upon all the issues herein, nevertheless, if you find that the steers covered by the mortgages in controversy were equal in value to Panhandle steers of the same age and condition, then in that event the plaintiff is not entitled to recover anything herein and your verdict must be for the defendant."

## I.

Instruction number five given for the defendant cannot be harmonized with instructions one and two given for the plaintiff. The instructions given for the plaintiff declared the law to be that if the defendant, for the purpose of inducing the plaintiff to purchase the notes, represented that the notes were secured by mortgages on 1,732 head of cattle; that they were what are known as Panhandle cattle; that they were shipped from the Panhandle of Texas in 1898; that they would weigh from 750 to 850 pounds each and were worth $35 a head; and that the makers of the notes had invested $10,000 of their own money in the cattle, and that any or all of said representations were false and fraudulent, and plaintiff upon the faith of and reliance upon the same, parted with his money, and that the defendant made any one of said representations knowing at the time that it was false or without knowledge of its truth or falsity did make the same, assuming or intending to convey the impression that he had actual knowledge,

then such representation was as fraudulent as if he had made it actually knowing that it was false. And that if such representation was made and was fraudulent as that word is defined in the instruction, then the defendant cannot claim that he did not intend thereby to actually injure or actually defraud plaintiff or that he was innocent or acted honestly and in good faith in relation thereto.

Instruction number five asked by the defendant and given by the court declared the law to be that the plaintiff could not recover upon the ground of a misrepresentation by the defendant as to the number of cattle owned by the makers of the notes, unless the plaintiff established by a preponderance of the evidence that the makers of the notes did not in fact own the number of steers recited in the mortgages, and that the defendant knew the number of steers set forth in the mortgages, and knew that the same was untrue, and that the makers of the notes did not own the number therein represented, and knowing such facts represented to the plaintiff that the makers of the notes did own the number of cattle recited in the mortgages and that plaintiff relied upon such representations in making said loan. In other words, defendant's instruction number five limited the defendant's liability to his actual knowledge of the number of cattle owned by the makers of the notes and ignored the question of the representations actually made without actual knowledge of their truth or falsity. Or, otherwise stated, the theory of the defendant's instruction is that the defendant is not liable unless he actually knew the representations to be false, whereas the theory of the plaintiff's instructions is that the defendant is liable if he made the representations actually knowing them to be false, and also if he made the representations without knowing whether they were true or false, and while conscious that he had no knowledge of their truth but intended to convey the impres-

sion to the plaintiff that he had actual knowledge of their truth.

One who makes representations which he does not know to be true, and conscious of the fact that he has no knowledge on the subject, to another whom he knows has no knowledge as to the truth or falsity of the representation, is as much guilty of fraud as if he had actual knowledge of the falsity of the statement, and if the party to whom the representation is made relies upon it and is injured thereby, he is entitled to recover from the party making the representation.

In Bank of North America v. Crandall, 87 Mo. l. c. 211, it was said: ''And if a party intentionally misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, this constitutes positive or actual fraud, in the truest sense of the terms. And the misrepresentation is not confined to words or positive assertions; it may well consist of deeds, acts or artifice to mislead. [1 Story, Eq. Jur., sec. 192.]''

In Dunn v. White, 63 Mo. l. c. 185, it is said: ''The now generally recognized doctrine is, that in order to support a personal action for fraudulent representations it is not sufficient to show that the party made statements which he did not know to be true, and which were in fact false; there must be fraud as distinguished from mere mistake. It is not, however, always absolutely necessary that an actual falsehood should be uttered to render the party liable in an action for deceit; if he states material facts as of his own knowledge, and not as a mere matter of opinion or general assertion, about a matter of which he has no knowledge whatever, this distinct, willful statement in ignorance of the truth, is the same as the statement of a known falsehood, and will constitute a *scienter*. These principles have been

recognized and enforced in the courts of this State from a very early period."

In Dulaney v. Rogers, 64 Mo. l. c. 203, it was said: "It seems to be established that an action based upon the deceit or fraudulent representations of another, cannot be maintained in the absence of proof that the party making them believed or had good reason to believe at the time he made them that they were false, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. When the above facts are proven the *scienter* necessary to maintain the action for deceit, founded on false representations, is established."

In Nauman v. Oberle, 90 Mo. 669, it was said: "On the part of plaintiff the court instructed the jury to the effect that, if they believed that it falsely and fraudulently represented the number of the hides to be not less than three hundred and forty, and knew the representation was not true, and that the representation was made to induce plaintiff to buy, or that, if they believed defendant made such representations as of his own knowledge, not knowing them to be true, and plaintiff made the purchase, relying thereon, the plaintiff was entitled to recover. These instructions are in harmony with the principle announced in the following cases: Dulaney v. Rogers, 64 Mo. 201; Walsh v. Morse, 80 Mo. 568; Jones v. Railroad, 79 Mo. 92." [See, also, Bank v. Trust Co., 179 Mo. l. c. 664.]

The effect of the giving of plaintiff's instructions one and two was to tell the jury that the defendant was liable if he made the representations knowing them to be false, and also if he made them, without knowing whether they were true or false, though conscious that he had no such knowledge, but intending to convey the impression that he had such knowledge; whereas the defendant's instruction number five told the jury that the

defendant was not liable unless he knew the number of cattle set forth in the mortgages and knew that his statements in reference thereto were false, thereby leaving the jury in hopeless confusion as to which was the rule of liability in law, or in other words, producing a hopeless conflict between the two instructions.

The instructions given for the plaintiff correctly declared the law. The fifth instruction given for the defendant was erroneous.

In the present state of the record it is not deemed necessary to further examine or discuss the case, inasmuch as what is hereinbefore said necessarily results in the reversal of the judgment below.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

All concur.