**LIGON SPECIALIZED HAULER, INC., a corporation, Plaintiff-Appellant,**

v.

**INLAND CONTAINER CORPORATION, a corporation, Defendant-Respondent.**

**No. 38226.**

Missouri Court of Appeals, Eastern District, Division Four.

April 24, 1979.

Robert C. Ely, Robertson, Ely & Wieland, St. Louis, for plaintiff-appellant.

Eugene Buckley, Evans & Dixon, Elbert Bonnett, St. Louis, for defendant-respondent.

DOWD, Presiding Judge.

A case of negligent misrepresentation.

This is an appeal from the judgment of the Circuit Court of the County of St. Louis in which the Court set aside the jury's verdict awarding $5,500 to the plaintiff-appellant, and entered judgment for defendant-respondent in accordance with respondent's motion.

Appellant contends that the Court erred in entering judgment favorable to the respondent because a) there was sufficient evidence to support the jury's finding of negligence b) the respondent's misrepresentation of the weight of the load was a direct cause of the damages sustained by the machinery, and c) the appellant and its driver were not contributorily negligent as a matter of law.

Appellant, Ligon Specialized Haulers, Inc., instituted the action below to recover $13,360 in expenses incurred as a result of damages sustained by machinery transported by appellant for respondent Inland Container Corporation. The record discloses that the latter corporation is in the business of manufacturing and shipping corrugated boxes. Inland's shipping foreman, Sloman Miller, contacted William Lewellyn of Ligon Specialized Haulers, to ship a Sheridian die cutter. Mr. Lewellyn asked Mr. Miller the weight of the machine and was told it weighed thirty to thirty-five thousand pounds and would require a flat bed truck for shipment. The bill of lading prepared by respondents contained the notation that the machine weighed 35,000 pounds "subject to correction". In accordance with the information supplied in the telephone conversation, appellant furnished a flat bed truck to haul the machinery. Respondent's maintenance crew loaded the machinery on the truck at its plant in Fenton, Missouri, after which appellant's driver, Paul Russell, departed for Michigan.

Russell had the truck weighed at a weigh station in East St. Louis and discovered that the truck was overweight. The scales revealed that the machine weighed approximately 58,000 pounds causing the load to exceed the legal limit of 73,280 pounds by 9,200 pounds. Lewellyn notified Miller of the weight excess and was instructed to bring the truck back for reloading the following morning at 6 a. m. Before leaving the weigh station and while en route to Missouri, Russell rechecked the chains to insure that the load was secure. Upon entering the St. Louis Truck Port which had an uphill angular driveway, the machine broke loose and fell from the truck.

Appellant's vice president contacted the consignee in Michigan to notify them of the damage to the machinery. It was estimated that the cost of repair would be $20,000 and would require 8–10 weeks. The consignee, G & L Industries, informed appellant that time was of the essence, as the die cutter was needed to fulfill a contract requirement. In anticipation of impending claims, appellant bought a die cutter from a Chicago corporation and forwarded it to G & L Industries. The substitute cutter was purchased by appellant for $11,000, whereas the initial cutter which was in poor condition at the time of sale, was purchased by G & L for $5000. Appellant prayed for damages of $13,360 representing $11,000 for the substitute cutter and $2,360 for expenses incurred in removing and shipping the original machine. Respondent's motions for a directed verdict at the close of both party's cases were overruled. The cause was submitted to the jury on theories of negligent misrepresentation, failure to warn, and contributory negligence and a verdict of $5,500 favorable to the plaintiff was returned. Following receipt of the verdict, the court sustained respondent's motion for judgment in accordance with its motion for directed verdict at the close of all the evidence.

In this appeal the monetary amount of the jury's verdict is not challenged.

Our review of the issue presented in the case consists of a consideration of the evidence and inferences therefrom favorable to the non-moving party, in order to ascertain whether reasonable minds could differ regarding the proper outcome of the case. *Lesser v. Rubin*, 548 S.W.2d 860, 864 (Mo.App.1977).

Although this cause may have also lent itself to analysis under federal agency regulations, Uniform Commercial Code principles, or the common law relating to shippers and carriers, appellant has styled this case in tort, specifically as one of negligent misrepresentation. The jury was instructed to find for the appellant if they believed: The respondent advised the appellant that the machinery weighed 35,000 pounds and the latter supplied a flat bed trailer in reliance upon respondent's description; and, the machinery weighed approximately 56,000 pounds; and, due to the additional weight the machinery was apt to "shift and fall" from the truck while en route; and the respondent knew or could have known the machine weighed 56,000 pounds by using ordinary care, and failed to warn appellant of the machine's true weight and was thereby negligent.[1] The parties have submitted different analyses regarding the nature of the duty owed in a case of negligent misrepresentation.

Appellant has theorized that the Restatement of Torts, Second Edition, Section 311, defines the nature of the duty applicable to the present case:

"One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information." (At p. 106).

As appellant's action was instituted to recover damages for expenses incurred, however, Restatement of Torts, Second Edition, Section 552, offered by respondent as the definition of the scope of the duty owed, is more applicable:

---

1. Apparently because of the hybrid nature of the case, appellant fashioned this instruction after MAI 31.01. By way of observation, appellant's coupling of failure to warn with negligent misrepresentation in the instruction may have operated to increase its burden on the trial level.

"One who, in the course of his business, profession or employment or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (At 126–127).

Although our research has revealed that Section 552 has not been expressly adopted in Missouri, we regard it as a persuasive frame of reference for the cause of action stated herein. The comment to this section contains the explanation that this duty extends to those parties to a commercial transaction who are aware that the information supplied is intended to be relied upon by the other party. In order to ascertain whether this standard of care is applicable, the following review of the record is necessary.

The evidence revealed that respondent's shipping foreman, Sloman Miller, did not consult the home office in Indianapolis to ascertain the weight of the Sheridian die cutter. The weight estimate was offered to Miller by respondent's master mechanic, Anthony Vendryzk. The latter deemed himself to be qualified to offer such an estimate because he had shipped a similar machine for the respondent in a prior year. In his deposition, Vendryzk characterized his estimate as a guess and admitted that although the record book was silent on the machine's weight, he did not consult the home office for information on the issue. The record further reveals that Vendryzk also had guessed at the weight of the machine which he had previously shipped for the respondent, and upon which his supposed expertise was based.

Sloman Miller further testified that the weight of the machinery was not discussed in his initial conversation regarding the shipment with appellant's terminal manager, William Lewellyn. The latter testified however, that the issue of weight is customarily discussed because it is a condition precedent to the type of truck to be provided. Lewellyn also testified that Miller requested a 40 foot flat bed truck. In compliance with Miller's request for the particular truck and estimation that the weight of the machine was 35,000 pounds, appellant provided a flat bed truck. Had the true weight of the machinery been known to appellant, a low-boy truck would have been provided. Lewellyn had previously been employed as respondent's shipping foreman. He testified that during his tenure with the respondent it was normal procedure to contact the home office in Indianapolis if the plant records were silent on the weight of a particular item to be shipped.

The record indicates that upon learning that the truck was overweight appellant consulted respondent for further instructions. When notified of the actual weight respondent's shipping foreman replied, "you are kidding, can't be". Appellant was advised to return to respondent's plant the following morning. Appellant's driver headed for a truck port which was within two miles of respondent's plant to spend the night. While en route the driver repeatedly checked the chains which secured the machinery. The chains were in substantially good condition and were sufficient for hauling machinery weighing 35,000 pounds. Appellant's driver thought the ramp at the truck port had a tricky entrance. However, the manager of the truck port testified that approximately 300 tractor trailers negotiate the entrance ramp each day. He observed appellant's driver entering the driveway on the date of the mishap and estimated the driver's speed at 3 or 4 miles per hour.

The facts indicate that respondent, in supplying appellant with the particular specifications, was aware that appellant would in turn rely on the information in supplying a truck which would accommodate the load without exceeding the legal weight limit. There was sufficient evidence in the record which demonstrated the existence and breach of respondent's duty to the appellant.

The issue of whether the respondent's breach of the duty was the proximate cause

of appellant's injury necessitates a discussion of appellant's alleged contributory negligence. The question of appellant's contributory negligence was submitted to the jury in the following form:

"Your verdict must be for defendant whether or not defendant was negligent if you believe:

"First, plaintiff's driver either: failed to chain or secure the load adequately when he knew or in the exercise of ordinary care could have known that the load was overweight, or drove his loaded vehicle up the ramp when he knew or in the exercise of ordinary care could have known that the load was overweight and top-heavy and that under said circumstances it was not reasonably safe to do so; and

"Second, the conduct of plaintiff's driver, in any one or more of the respects submitted in Paragraph First, was negligent; and

"Third, such negligence of plaintiff's driver directly caused or directly contributed to cause any damage plaintiff may have sustained."

The jury resolved this issue in favor of the appellant.

One is held to be contributorily negligent as a matter of law if his conduct, rather than the negligence of another party, is the proximate cause of an injury. Although an actor's negligence may be construed as contributing to the cause of an injury, it does not necessarily constitute contributory negligence as a matter of law. *McConnell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292 (Mo.1968).

It is our opinion that the jury reasonably could have found that the respondent's misrepresentation was the proximate cause of the damage to the machinery. Respondent's misdescription precipitated the driver's dilemma. Respondent's instruction that the driver return to the plant for reloading necessitated his operating the truck despite its illegal load. We find *Stumpf v. Panhandle Eastern Pipeline Co.*, 354 Mo. 208, 189 S.W.2d 223 (1945), cited by the appellant to be persuasive on this issue:

"the jury could have reasonably believed that such negligence of defendants was not only a direct, producing or efficient cause, but the direct, producing or efficient cause of plaintiff's injury, and that the negligence of plaintiff under the circumstances was a cause which should not be reasonably regarded as a direct, producing or efficient cause for which plaintiff should be considered responsible." (189 S.W.2d 223, 228).

It is our opinion that reasonable minds could disagree regarding the liabilities of the parties to this suit, and that the trial court erred in entering judgment in accordance with respondent's motion for a directed verdict at the close of all the evidence.

It is ordered that the judgment rendered by the trial court be reversed and the cause remanded with directions to reinstate the verdict of the jury and the judgment rendered thereon.

Reversed.

CRIST and SATZ, JJ., concur.