For the foregoing reasons, we affirm the judgment of the trial court.

All concur.

**Robert HUTTEGGER and Kathleen Huttegger, Plaintiffs-Respondents,**

**v.**

**Wilma R. DAVIS, d/b/a Town N' Country Real Estate**

**and**

**Dickherber Electric, Inc., Employees Retirement Trust, Defendants-Appellants.**

**No. 61574.**

Supreme Court of Missouri, En Banc.

May 13, 1980.

Rehearing Denied June 10, 1980.

---

Joseph J. Dolgin, Clayton, Melvin D. Benitz, St. Charles, for defendants-appellants.

W. Morris Taylor, Clayton, for plaintiffs-respondents.

HIGGINS, Judge.

Robert and Kathleen Huttegger sued Wilma R. Davis, doing business as Town N' Country Real Estate and Dickherber Electric, Inc., Employees Retirement Trust for fraudulent misrepresentation in the sale of real estate. The jury awarded $1,178.00 actual damages against both defendants and punitive damages of $3,000.00 against defendant Davis and $7,000.00 against Dickherber. The appeal was transferred from

the court of appeals, after opinion, to review whether plaintiffs made a submissible case on their cause of action. Reversed.

■ The determination whether plaintiffs made their case requires the Court to view the evidence that bears upon the elements of fraud in the light most favorable to plaintiffs, and give them the benefit of all reasonable inferences to be drawn from the evidence. *Ackmann v. Keeney-Toelle Real Estate Co.*, 401 S.W.2d 483, 488 (Mo. banc 1966). To this end the facts of this case will be taken substantially as stated by respondents.

Plaintiffs Robert Huttegger and Kathleen Huttegger live in High Country Estates near the City of Foley, Lincoln County, Missouri. In the summer of 1971 they lived in St. Louis County, Missouri, and in early August of that year they visited High Country Estates in an effort to find a home site. Defendant Davis was a real estate broker and sole proprietor of Town N' Country Real Estate Company, which engaged "in the sale of, promotion or development of real estate projects" for various companies, including defendant Dickherber Electric Inc., Employees Retirement Trust. When the Hutteggers went to High Country Estates they observed a sign on the land containing the name, "Town N' Country Real Estate" and the words, "Water and Electric". Plaintiffs also saw two other signs[1] in the same area advertising lots for sale. Some time thereafter, plaintiffs called Town N' Country Real Estate and talked to salesman, Mickey Owen. Plaintiffs were shown the lot by Mickey Owen and were advised that the purchase price was $2,460.00. Plaintiffs entered into a contract with Town N' Country Real Estate for the purchase of this lot on August 29, 1971. Prior to buying the lot, plaintiffs inquired of Mr. Owen and defendant Davis as to the availability of water for the subdivision since they planned to build a home on the lot. Both Owen and Davis told the plaintiffs that water service was in the process of being installed and that it would be available when they were ready to build their home. On the night of closing, plaintiffs again asked defendant Davis about the water and she assured them that the water would be available. She stated that "Mr. Dickherber was taking care of this and pipes were being brought out for the lines and that they were going to be turned over and they were going to be ready to be turned over." In May of 1973, plaintiffs entered into a contract to have the home built on the lot and made application to obtain water from the public district. At that time, plaintiffs were told by the district that no water was then available due to a lack of water supply, that the district was utilizing its full capacity, and that no new customers could be serviced. After plaintiffs' request for water hookup was denied, they contacted defendant Davis and asked her to assist in obtaining water. She advised that she would contact Mr. Dickherber and see if he could remedy the situation. Plaintiffs stated they would not have purchased the lot in High Country Estates had they known that public water would not be available.

Thereafter, plaintiffs decided to build a well and agreed to go half and half with a neighbor in building the well. They contracted with Flynn Drilling Company to drill the well; the total cost to the plaintiffs was $1,178.00. Plaintiffs' home was completed in late August, 1973 and they occupied it in September, 1973.

All witnesses called by the plaintiffs, including defendants Davis and Dickherber, testified that plaintiffs did not speak directly to any employee of the Dickherber Trust before signing the sale contract; that the first time plaintiffs ever met anyone from Dickherber Trust was at a subdivision meeting in 1974 or 1975. However, plaintiffs were aware they were purchasing the property from Dickherber Electric because

---

1. More than one party erected signs to advertise High Country Estates, and there is conflict as to which sign was actually seen. Dickherber admitted erecting a sign similar to the one described by plaintiff but denied ownership of the particular sign represented in plaintiffs' exhibits.

defendant Davis advised plaintiffs that she would talk to Mr. Dickherber about carrying the note on the property for a few months until they could obtain financing. Defendant Dickherber's name also appeared on the sale contract.

Plaintiffs read into the record interrogatories to defendants Wilma R. Davis and Dickherber Electric and answers thereto. Interrogatories to defendant Wilma R. Davis:

Question No. 10: Please state whether you or any of your agents or representatives ever represented to the general public that they would be able to obtain public water supply hook ups on the real estate purchased by the public, and state the following:

a. When said representations were made.

b. Who was present when said representations were made.

c. Where said representations were made.

d. At whose directions and authority said representations were made.

Answer: Yes.

a. Many times and places.

b. Many people.

c. Many places.

d. Eugene Dickherber.

Question No. 11: State whether or not you knew if public water supply hookups were available to the lots on High Country Estates, Lincoln County, Missouri, in August, 1971, and if you knew water hookups were available state:

a. From whom you learned this.

b. The exact date learned.

c. In what manner this information was conveyed to you.

Answer: I thought I knew it.

a. Mr. Dickherber.

b. Late 1970 or early 1971.

c. Verbally and later on a listing.

Interrogatories directed to Defendant Dickherber:

Question No. 9: Please state whether Dickherber Electric, Inc., or any of its agents or representatives has ever represented to Plaintiffs herein that they would be able to obtain public water supply hookups on the real estate purchased by Plaintiffs as set forth in Plaintiffs' Petition, and state the following:

a. When said representations were made.

b. By whom said representations were made.

c. Who was present when said representations were made.

d. Where said representations were made.

e. At whose direction and authority said representations were made.

Answer: No agent or employee of Dickherber Electric, Inc.'s Retirement Trust ever met or talked with Plaintiffs prior to their purchase of real estate.

Question No. 12: Please state the names and present addresses of the owners of High Country Estate development as of August, 1971.

Answer: Dickherber Electric, Inc., Employees Retirement Trust, 1708 South Fifth Street, St. Charles, Missouri 63301, as to those platted lots not sold.

Eugene Dickherber, called as plaintiffs' witness, stated that in 1971 the Dickherber Trust owned a certain piece of real estate in Lincoln County known as High Country Estates and that Lot 15 which was purchased by plaintiff was a part of the property developed there. He did not recognize the sign depicted in Plaintiffs' Exhibit No. 1 which advertised lots for sale in High Country Estates. He did not recall having a sign erected at High Country Estates advertising the sale of lots. However, after having his memory refreshed by his answer to Plaintiff's Interrogatory No. 10, he admitted placing a sign advertising High Country Estates at its entrance, caused a sign to be installed advertising High Country Estates and also stating that there would be water and electric. In the winter of 1970, Dickherber met with the Board of Trustees of Water District No. 1 to present plans and specifications concerning the supply of water for the Sand Hill Road area in

High Country Estates. At the time he appeared before the board, the District supplied water for a distance of 80 miles (of pipe). However, Eugene Chapman, manager of the public water supply district, stated that at the time Dickherber appeared before the board, the district serviced approximately 100 miles of pipe. It was Dickherber's understanding that the total capacity at the time he appeared before the board was approximately 400 or 500 hookups for the whole district. At the time that he applied for hookups for High Country Estates, it was his understanding that there were approximately 100 more hookups available for the total water district and not just for High Country Estates. Additional testimony by Dickherber in plaintiffs' case showed that in January or February of 1971 he received a letter from the Department of Health which stated that the capacity of the water supply was approximately another 100 hookups and that expansion was planned. After the summer of 1971, Dickherber did not check with the water district to ascertain what capacity the district had remaining or the number of hookups available. However, Dickherber testified that prior to August 29th, he knew that there was a limit to the number of people who could get hookups on the line. Dickherber did not indicate on his advertising sign at High Country Estates that the number of water hookups was limited.

Defendant Wilma Davis, called by plaintiffs, testified that she told them that public water would be installed because she had contacted Eugene Dickherber and he told her that he had contacted the water district and he was installing lines for water. She was aware of the fact that the plaintiffs were buying the property to build a house on and assured plaintiffs that they would be able to obtain public hookup when their house was built. She was aware that plaintiffs were purchasing the property with the intention of building a home on the property, and was aware that plaintiffs would not be building a home immediately because they had to pay off the property to estab-lish equity for the purposes of getting a loan to build the house. She did not know how many hookups would be available for High Country Estates nor did she make any inquiries as to the number of hookups available.

Eugene Chapman, manager of the water supply district, testified that the Public Water Supply District No. 1 in Lincoln County, Missouri serviced approximately 100 miles of pipe in 1971 and that there were around 400 hookups available for the whole system at that time. This water supply was serviced by one deep well and that in September of 1973 a second well was added. He stated that Mr. Dickherber appeared before the board and sought permission to connect High Country Estates subdivision onto the public water system. According to Chapman, Dickherber sought approximately 70 hookups for his subdivision. In May of 1973 the district had to reject applications for hookups to the High Country Estates subdivision due to a lack of capacity[2] and at that time approximately 20 or 25 hookups of the requested 70 hookups had been made to the area. Applications for hookups were refused beginning in May of 1973 due to the lack of capacity by the district to supply additional hookups and this situation endured throughout the summer of 1973 until some time in October of 1973 when a second well was put into use in the district. Mr. Chapman stated that in 1971 there was a ceiling or capacity as to the number of hookups that would be available to users of the public water system.

Plaintiffs alleged in Count I of their amended petition:

that they relied on the advertisements and representations made by the Defendants regarding the availability of public water supply hook-up and did in fact construct a home on the aforementioned property in reliance thereon; That upon application for public water supply hook-up, the Plaintiffs found that Defendants' advertisement and representations to be

---

2. There was testimony that a flood occurred in the area which apparently affected the well's supply capacity, but the specific reason for the water shortage was not clearly presented.

completely and wholly false and that such service was not available to Plaintiffs. Plaintiffs further state that at the time the Defendants advertised and represented that the public water supply hook-up would be available to Plaintiffs; Defendants knew that such advertisements and representations were false . . . . .

. . . Plaintiffs further state that as a result of the fraudulent advertising and false representations made by the Defendants regarding the availability of public water supply hook-up, the Plaintiffs were compelled to have their own well drilled in order to make their newly constructed home habitable; that Plaintiffs experienced extreme personal inconvenience and incurred personal expenses in the amount of $1,178.00 as a direct result of the fraudulent advertising and false representations made by the Defendants.

and in Count II (for punitive damages): that the advertisements and representations heretofore mentioned in Count I were made by the Defendants with willful, wanton and reckless disregard for their truth or falsity and were made in an effort to defraud Plaintiffs.

Plaintiffs submitted their theory of recovery in form MAI 23.05 and 19.01 (fraudulent misrepresentation by joint tortfeasors):

### Instruction No. 2

Your verdict must be for Plaintiffs and against Defendant Davis if you believe:

First, Defendant Davis represented to Plaintiffs that a public water supply hookup would be available to Plaintiffs, intending that Plaintiffs relied upon such representation in purchasing the real estate and,

Second, the representation was false and,

Third, Defendant did not know whether the representation was true or false and,

Fourth, the representation was material to the purchase by Plaintiffs of the real estate and,

Fifth, Plaintiffs relied upon the representation in making the purchase and in so relying, Plaintiffs were using ordinary care and,

Sixth, such representation either directly caused damage to Plaintiffs or contributed with the acts of Defendant Dickherber Electric Inc., Employees Retirement Trust to directly cause damage to Plaintiffs.; [3]

and by Instruction 8, in form MAI 10.03:

If you find the issues in favor of Plaintiffs, and if you believe the conduct of one or more of the Defendants as submitted in Instruction No. 2 or 4 was willful, wanton or malicious, you may assess punitive damages in addition to any damages assessed under Instruction No. 7.

Appellants contend the court should have directed a verdict for defendants because plaintiffs failed to establish the requisite elements of a case of fraudulent misrepresentation. Respondents take the position that the court did not err in its submission of this case and assert that plaintiffs adduced evidence "satisfying all elements of fraud."

To prevail on their claim of fraudulent misrepresentation, plaintiffs were obliged to prove:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of falsity of the statement;

(5) the hearer's reliance on its truth and the right to rely thereon; and

(6) proximate injury.

*See Ackmann v. Keeney-Toelle Real Estate Co., supra.* Or, as stated, *Latta v. Robinson Erection Co.,* 363 Mo. 47, 248 S.W.2d 569 (banc 1952), to make a cause of action for fraud, plaintiffs must plead and prove:

---

**3.** Instruction No. 4 submitted Dickherber's liability on the same theory.

that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury and damage.

*Id.* 248 S.W.2d at 576. *See also Wilson v. Murch,* 354 S.W.2d 332 (Mo.App.1962); *Kreutz v. Wolff,* 560 S.W.2d 271 (Mo.App. 1977); *Yeager v. Wittels,* 517 S.W.2d 457 (Mo.App.1974).

■ Plaintiffs concede they did not plead or try their case on the theory that defendants knew their representations to be false thereby intentionally misrepresenting availability of water hookups. Rather, they contend that defendants did not know if their representations were true or false when made. When viewed in the light most favorable to their case, *Ackmann v. Keeney-Toelle Real Estate Co., supra,* plaintiffs' evidence is insufficient to sustain a verdict of fraud on the theory they advance.

As of late 1970 Dickherber received permission from the water district board for 70 hookups, approximately the number of lots for sale in its subdivision. In January or February of 1971, Dickherber was advised by the Department of Health that the capacity of the water supply was approximately another 100 hookups and that expansion was planned. Dickherber was also made aware of the 100 hookup limitation by the water district board sometime in 1971 prior to the August 29, 1971 contract with plaintiffs. The representations alleged in this suit were made by billboard and word of mouth in August of 1971.

Consequently, at the time the representations were made, Dickherber: (a) knew that in late 1970 it had been guaranteed 70 hookups by the board; (b) knew there were 100 hookups remaining from which the 70 could be taken; (c) had been advised that future expansion was planned; and (d) had

no reason to foresee (nor did the water district board) that the first well would not adequately provide for the 70 hookups promised. No one had any idea or any reason to suspect that water would not be available to plaintiffs two years later; no additional amount of investigation by Dickherber or Davis at or prior to the time of the representations would have revealed otherwise.

Thus, plaintiffs' contention that defendants did not know whether the representations were true or false when made is not sustained by the record. Dickherber had full knowledge that its promise as to the availability of public water was based on statements by the only two authorities available, the water district and the Department of Health.

In its opinion the court of appeals denominated plaintiffs' case as one "essentially for negligent misrepresentation."[4] Plaintiffs did not plead or submit such theory in the trial court, and did not urge that theory in the court of appeals. In this Court, by supplemental brief, plaintiffs specifically eschew negligent misrepresentation as their theory of recovery. Their disclaimer asserts that:

Appellants, (Defendants) in their additional brief, have engaged in an exercise in semantics by arguing that Respondents (Plaintiffs) pled and tried their case on the theory of fraudulent misrepresentation and submitted it to the jury under Missouri Approved Instruction 23.05, but that now Respondents have changed horses in the middle of the stream and argue their case to this Court on a negligent misrepresentation theory. Respondents submit that Appellants have also been confused by the Appellate Court's "negligent misrepresentation" language. This case was, and always has been, a case based on the fraudulent misrepresentation by the Appellants in representing to Respondents that water hookups would be available to Respondents when Appel-

---

4. For a case of negligent misrepresentation, as distinguished from fraudulent misrepresentation, see *Ligon Specialized Hauler, Inc. v. In-* *land Container Corp.,* 581 S.W.2d 906 (Mo.App. 1979), and its reliance on Restatement (Second) of Torts, Negligent Misrepresentation, § 55.

lants did not know whether such representations were true or false. The case was submitted to the jury under Missouri Approved Instruction 23.05 and recovery under this type of fraudulent misrepresentation entitled Respondents to punitive damages.

█ Plaintiffs have thus limited their lawsuit to a theory of fraudulent misrepresentation, understandably in an attempt to preserve their verdict for punitive damages, the bulk of their award. In these circumstances, discussion of negligent misrepresentation is not required.

The judgment is reversed.

BARDGETT, C. J., and DONNELLY, SEILER, and MORGAN, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

WELLIVER, Judge, dissenting.

I respectfully dissent. Although I agree that there is insufficient evidence in the record to support a jury finding that appellants knew their representations were untrue or were reckless as to the truth or falsity of those representations, I believe the case should be remanded for a determination whether appellants negligently misrepresented the availability of water, causing respondents pecuniary damage. The principal opinion would deny all recovery to plaintiffs-respondents upon the ground that they are bound by the last, possibly erroneous, theory adopted by their counsel.

The question whether the case should be remanded for a new trial when the plaintiff proceeded upon an erroneous theory was thoroughly considered in *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d 396, 398 (Mo. banc 1969), where we stated:

In this posture, what disposition should be made of the case? It is apparent that plaintiff proceeded upon an erroneous theory of liability on the part of defend-

ant. However, under the circumstances, we cannot conclude that this was "done for strategic advantage." See *Smith v. St. Louis Public Service Co.*, 364 Mo. 104, 111, 259 S.W.2d 692, 696. The rule stated in *Smith v. Terminal R. R. Ass'n of St. Louis*, Mo.App., 160 S.W.2d 476, 479, applies: "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." Cf. *Cudney v. Midcontinent Airlines*, 363 Mo. 922, 254 S.W.2d 662, and *Pigg v. Bridges*, Mo., 352 S.W.2d 28.

The record shows a state of facts which justifies a remand to permit plaintiff to seek recovery under some other theory of liability, if so advised. For example, see 1 Restatement, Law of Torts, Second, § 46; *Pretsky v. Southwestern Bell Telephone Company*, Mo., 396 S.W.2d 566. *Accord, Smith v. Inter-County Telephone Co.*, 559 S.W.2d 518, 525 (Mo. banc 1977). Although respondents submitted the case on a theory of fraudulent misrepresentation, I cannot conclude that respondents pursued that theory "for strategic advantage," in view of the fact that this Court has never expressly recognized a cause of action for negligent misrepresentation nor has it provided a pattern instruction for submitting a case of negligent misrepresentation.

Respondents, aggrieved by the ruling of the court of appeals, sought transfer to this Court, alleging that they had "presented substantial proof" of the "failure of [appellants] to exercise reasonable care or compe-

tence" and that the opinion of the court of appeals implicitly "abolished the action for negligent misrepresentations." Respondents alleged that the opinion of the court of appeals was contrary to *Ligon Specialized Hauler, Inc. v. Inland Container Corp.,* 581 S.W.2d 906 (Mo.App.1979), and that the law of misrepresentation required reexamination by this Court to remove the confusion that results from viewing negligent misrepresentation in terms of fraudulent misrepresentation. The fact that respondents' counsel shifted position in his reply brief back to reliance upon fraudulent misrepresentation in a transparent effort to preserve a questionable award of punitive damages should not be permitted to prejudice the right of respondents to a jury determination whether the appellants negligently caused them pecuniary damage.

The principal opinion declines to consider whether the evidence would justify submission on a theory of negligent misrepresentation. Respondents contended in their application to transfer that the evidence supported the judgment, asserting that appellants negligently misrepresented the availability of water at High Country Estates.

In *Ligon Specialized Hauler, Inc. v. Inland Container Corp.,* 581 S.W.2d 906 (Mo. App.1979), the Court of Appeals, Eastern District, recognized the existence of a cause of action for negligent misrepresentation, quoting with approval 3 Restatement (Second) of Torts § 552 (1977). The Restatement (Second) of Torts § 552 states:

552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them, by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

3 Restatement (Second) of Torts at 126–27 (1977); 581 S.W.2d at 909.

The elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false,[1] the former merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information.[2]

This Court has never passed directly on the question whether Missouri recognizes a right of action for economic loss caused by

---

1. To prove "recklessness" in this context, "[i]t is sufficient that [the defendant] made the representations with the consciousness that he was without knowledge as to their truth or falsity, when, in fact, they were false." *Ackmann v. Keeney-Toelle Real Estate Co.,* 401 S.W.2d 483, 489 (Mo. banc 1966); *Luikart v. Miller,* 48 S.W.2d 867, 868 (Mo. banc 1932); *Western Cattle Brokerage Co. v. Gates,* 190 Mo. 391, 89 S.W. 382, 385–86 (1905); *Wilson v. Murch,* 354 S.W.2d 332, 339 (Mo.App.1962).

2. Compare Restatement (Second) of Torts § 526, Comment b at 60 with Restatement (Second) of Torts § 552, Comment e at 130. For a discussion comparing intentional and negligent misrepresentation, see James and Gray, Misrepresentation—Part I, 37 Md.L.Rev. 286, 296–315 (1977). *See also, Ollerman v. O'Rourke,* 94 Wis.2d 17, 288 N.W.2d 95, 1980, at 108 n. 27.

negligent misrepresentation. In *Lesser v. William Holliday Cord Associates, Inc.*, 349 F.2d 490 (8th Cir. 1965), the court assumed that, although no Missouri case had decided the issue, the Missouri courts would accept the Restatement of Torts § 552 as the law of this state, but found that the plaintiff in that case had failed to show that his damages were caused by the allegedly false representations. *Id.* at 492–93.

In *Anderson v. Boone County Abstract Co.*, 418 S.W.2d 123 (Mo.1967), the Court considered the implications of recognizing a right of action for negligent misrepresentation resulting in financial loss in a business transaction. In that case, the plaintiff sought damages from an abstract company for negligently certifying as complete an abstract of title to real property which did not refer to a duly recorded restrictive agreement on the use of the land. The abstract in question had been prepared by the defendant for persons who conveyed the property involved to persons who in turn conveyed the property to persons from whom the plaintiffs had purchased the property. The Court quoted the first Restatement of Torts § 552, which is substantially similar to Restatement (Second) of Torts § 552, and discussed the opinion in the *Lesser* case. *Id.* at 128–29. The Court assumed that when information is supplied for guidance in business transactions, a cause of action for negligent misrepresentation may be maintained by third parties who act in reliance thereon, but found it unnecessary to decide the question. The Court held that, even if such a right of action were recognized, the plaintiff in *Anderson* was outside the class of persons to whom a duty of due care extends. *Id.* at 129–30.

I believe that the time has come for this Court to formally acknowledge that a cause of action exists in this state for the recovery of pecuniary loss caused to persons who justifiably rely on information supplied for their guidance in a business transaction by one who provides the information in the course of his business, profession or other transaction in which he is interested, if the information is false and the supplier of the information failed to exercise reasonable care or competence in obtaining or communicating the information.[3] The standard of care which a supplier of information in such a case is required to meet is appropriately elaborated in Comment f to § 552 of the Restatement (Second) of Torts:

> If the matter is one that requires investigation, the supplier of the information must exercise reasonable care and competence to ascertain the facts on which his statement is based. He must exercise the competence reasonably expected of one in his business or professional position in drawing inferences from facts not stated in the information. He must exercise reasonable care and competence in communicating the information so that it may be understood by the recipient, since the proper performance of the other two duties would be of no value if the information accurately obtained was so communicated as to be misleading.

3 Restatement (Second) of Torts § 552, Comment f at 131–32 (1977).

MAI 23.05, the verdict directing instruction for fraudulent misrepresentation used

---

**3.** A cause of action for negligent misrepresentation having the elements stated in Section 552 of the Restatement of Torts has been recognized in several other jurisdictions. *Van Buren v. Pima Community College District Board*, 113 Ariz. 85, 546 P.2d 821, 823 (banc 1976); *Bonhiver v. Graff*, 311 Minn. 111, 248 N.W.2d 291, 298–99 (Minn.1976); *Neff v. Bud Lewis Co.*, 89 N.M. 145, 548 P.2d 107, 110 (1976); *Rempel v. Nationwide Life Insurance Co.*, 471 Pa. 404, 370 A.2d 366, 367–68 (1977); *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240, 244–45 (Tenn.1972). Some jurisdictions have expressly approved the formula found in Restatement (Second) of Torts § 552. *Kovaleski v. Tallahassee Title Co.*, 363 So.2d 1156, 1158–59 (Fla.App.1978); *Ryan v. Kanne*, 170 N.W.2d 395, 402–03 (Iowa 1969); *Stotlar v. Hester*, 92 N.M. 26, 582 P.2d 403, 406 (1978); *Banker's Trust Co. v. Steenburn*, 95 Misc.2d 967, 409 N.Y.S.2d 51, 66 (1978); *Aetna Life and Casualty Co. v. Lyon*, 576 S.W.2d 114, 117 (Tex.Civ.App.1979); *Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W.2d 830, 831–32 (Tex. Civ.App.1978); *Rogers v. City of Toppenish*, 23 Wash.App. 554, 561, 596 P.2d 1096, 1099 (1979); *Wilber v. Western Properties*, 22 Wash. App. 458, 463, 589 P.2d 1273, 1276–77 (1979).

in the trial court, will not in my opinion properly submit the issue of appellants' liability for negligent misrepresentation.[4] Respondents' recovery for negligent misrepresentation requires proof that appellants failed to exercise reasonable care to obtain or communicate true information concerning whether water would be available to respondents' lot in High Country Estates. Whether appellants acted reasonably depends on whether they exercised the care and competence that respondents were entitled to expect in the light of all the circumstances. I believe that "the recipient [of the information represented] is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form an intelligent judgment upon the data obtained." 3 Restatement (Second) of Torts § 552, Comment e at 130 (1977).

On the basis of the record before us, I am unable to say that upon retrial with the issues properly restricted respondents would not be able to make a case of negligent misrepresentation against one or both of the appellants.[5] Pending approval and adoption of a pattern instruction for the submission of negligent misrepresentation, I would suggest that the issue be submitted using MAI 23.05 with the third paragraph thereof modified to read:

Third, defendant failed to exercise reasonable care or competence in obtaining

or communicating the information represented, and,

. . . .

For the foregoing reasons, I would reverse the judgment and remand the case for further proceedings consistent with this opinion.

4. Pending review of MAI 23.05 by the Committee on Instructions, I acknowledge that this opinion would render MAI 23.05 inappropriate for use without modification in certain cases of fraud. MAI 23.05 blurs the distinction herein drawn between fraudulent misrepresentation and negligent misrepresentation. Paragraph third of MAI 23.05 permits recovery for fraudulent misrepresentation if the jury believes that "defendant did not know whether the representation was true or false." More properly, the instruction should express the requirement that the defendant made a false representation "with the consciousness that he was without knowledge as to their truth or falsity." *Ackmann v. Keeney–Toelle Real Estate Co.*, 401 S.W.2d 483, 489 (Mo. banc 1966); *Luikart v. Miller*, 48 S.W.2d 867, 868 (Mo. banc 1932); *Wilson v. Murch*, 354 S.W.2d 332, 339 (Mo. App.1962). The Committee's Comments to

MAI 23.05 quote the correct rule from *Wilson*, 354 S.W.2d at 339.

5. The following illustration is provided in the Restatement:

A, having lots for sale, negligently supplies misinformation concerning the lots to a real estate board, for the purpose of having the information incorporated in the board's multiple listing of available lots, which is distributed by the board to approximately 1,000 prospective purchasers of land each month. The listing is sent by the board to B, and in reliance upon the misinformation B purchases one of A's lots and in consequence suffers pecuniary loss. A is subject to liability to B. 3 Restatement (Second) of Torts § 552, Comment h, Illustration 4 at 134.